**James DAVIS, Plaintiff-Appellant,**

v.

**M. J. DUPLANTIS, M.D., and W. Hammond Newman, M.D., Defendants-Appellees.**

**No. 30991.**

United States Court of Appeals, Fifth Circuit.

Sept. 16, 1971.

Russ M. Herman, Mark Herman, Maury Herman, New Orleans, La., for plaintiff-appellant.

H. Martin Hunley, Jr., New Orleans, La., for W. Hammond Newman, M.D.

Breard Snellings, of Sessions, Fishman, Rosenson, Snellings & Boisfontaine, New Orleans, La., for M. J. Duplantis, M.D.

Before GOLDBERG, GODBOLD and RONEY, Circuit Judges.

RONEY, Circuit Judge:

This medical malpractice case against two doctors resulted in a directed verdict for one defendant and a jury verdict for the other. The plaintiff appeals the directed verdict in favor of Dr. M. J. Duplantis on the ground that there were factual issues which should have gone to the jury. He appeals the jury verdict in favor of Dr. W. Hammond Newman on the ground that it was reversible error to allow the testimony of an expert witness whose name was submitted a day later than required by the pretrial order. We affirm both judgments.

Plaintiff, James Davis, injured his left knee in 1963 while working as a laborer. He was attended by Dr. M. J. Duplantis, a general practitioner, and underwent an operation for cartilage removal by Dr. W. Hammond Newman, an orthopedic surgeon. Both doctors practiced medicine in Covington, Louisiana. At some time subsequent to the operation, plaintiff developed an arteriovenus fistula behind his left knee. Although plaintiff complained to both of the defendants that he had pains and a "jumping" sensation in his left knee, neither doctor diagnosed the problem as an arteriovenus fistula. The fistula was surgically corrected by another doctor in 1967. While it was contended that the arteriovenus fistula arose out of Dr. Newman's operation, plaintiff did not contend that Dr. Newman was guilty of negligence in the performance of the operation. The single thrust of the malpractice claim was that the defendant doctors negligently failed to make a post-operative diagnosis of plaintiff's condition before it caused physical damages alleged to have rendered plaintiff permanently disabled.

### I. Dr. M. J. Duplantis

This is a diversity case controlled by Louisiana law which follows the so-called "locality rule" in malpractice cases. This rule holds that physicians and surgeons are not negligent if they exercise that degree of skill and

care which is usually possessed and exercised by practitioners of their profession in the same locality or community.[1]

■ To recover in a malpractice case, plaintiff has the dual burden of proving first, the recognized standard of care generally practiced by other physicians in the community in similar situations, and second, that the defendant negligently failed to follow that standard.[2]

■ Relying on this rule, the trial court directed a verdict for Dr. Duplantis on the ground that plaintiff's proof failed to provide the first ingredient of his case, i. e., the standard of care existing and to be followed by a general practitioner of medicine in the community of Covington, Louisiana. Contending that the case should have been sent to the jury, plaintiff says three things: first, the community standard was established through the testimony of Dr. Duplantis himself while under cross-examination; second, notwithstanding any community standard, the doctor failed to take known precautions for his patient's welfare; and third, Dr. Duplantis failed to inform his patient of certain x-ray results and, therefore, is liable for simple negligence.

### 1.

We can assume, without deciding, that plaintiff could carry his burden of establishing the standard of professional practice against which a defendant doctor's acts must be tested through the testimony on cross-examination of the defendant doctor himself.[3] This avails plaintiff nothing however because a complete reading of Dr. Duplantis' testimony reveals that he did not testify to any community standards at all; that is, he did not testify as to what other practitioners did in situations similar to this one. He did testify to certain procedures and practices which he customarily followed in various circumstances, but even if it could be presumed that his customary practices would establish the standard for the community, he at no time indicated that he varied from his own standard practices in this particular situation, much less that any supposed variance amounted to negligence. Before any jury should be left to speculate as to whether certain diagnostic procedures should have been executed by a physician, there must be some proof that other doctors in similar circumstances would have carried out such procedures as a minimum standard of practice, and the jury must be given some evidence other than counsel's argument that the omissions were negligent in character. A mere listing of those tests which could have been made, but were not, does not present an issue for the jury.

### 2.

■ In arguing that irrespective of any community standard the jury should have been left to determine whether the doctor failed to take necessary precautions for his patient's welfare, the plaintiff relies on Favalora v. Aetna Casualty & Surety Co., 144 So.2d 544 (La.App. 1962), as an exception to the locality rule. This argument misconstrues *Favalora*, which merely holds that a doctor's compliance with a community standard does not relieve him of liability in a malpractice case if it is shown by a member of the profession from defendant's locality that the procedure followed is recognized by members of the same profession as being faulty and contrary to the teaching in medical colleges.

There was simply no testimony in plaintiff's case upon which the jury could conclude that the procedures followed by Dr. Duplantis as a general

1. Meyer v. St. Paul Mercury Indemnity Co., 225 La. 618, 73 So.2d 781, 786 (1954).

2. Davis v. Virginian Railway Co., 361 U.S. 354, 80 S.Ct. 387, 4 L.Ed.2d 366 (1960); Meyer v. St. Paul Mercury Indemnity Co., *supra*; Uter v. Bone & Joint Clinic, 249 La. 851, 192 So.2d 100 (1966).

3. Delta Engineering Corporation v. Scott, 322 F.2d 11 (5th Cir. 1963); Stallcup v. Coscarart, 79 Ariz. 42, 282 P.2d 791 (1955); Huffman v. Lindquist, 213 P.2d 106 (Cal.App.1950); McDermott v. Manhattan Eye, Ear and Throat Hospital, 15 N.Y.2d 20, 255 N.Y.S. 65, 203 N.E.2d 469 (1964).

practitioner were, in the eyes of the profession, faulty.

### 3.

Plaintiff cites Dowling v. Mutual Life Ins. Co. of New York, 168 So. 2d 107 (La.App.1964), for his argument that Dr. Duplantis was guilty of actionable negligence because he failed to inform his patient of the results of certain x-rays. In *Dowling* there were two factors which keyed the court's holding that the doctor there owed a duty to inform his patient of the substance of the radiologist's report. First, and most important, five doctors testified that in like circumstances they would have informed the patient of the report. Thus there was a proven standard of practice in the community to which *Dowling's* doctor did not conform, proof of which is absent in this case. Second, the radiologist's report there indicated a danger of tuberculosis and the need for further x-ray examination. The radiologist's report to Dr. Duplantis did not indicate serious implications and, in fact, did not indicate that the x-ray showed the difficulty which was eventually diagnosed.

Carefully reviewing all of plaintiff's arguments, it is apparent that the trial judge committed no reversible error in directing a verdict on the ground that there was no evidence that defendant's acts amounted to negligence by proven professional standards, his own or the community's.

### II. Dr. W. Hammond Newman

The jury rendered a verdict for defendant, Dr. W. Hammond Newman, by finding that Dr. Newman was negligent in his treatment of plaintiff's condition subsequent to the operation, but that such negligence was not a proximate cause of the plaintiff's injuries.[4]

The sole error claimed on appeal is that the trial judge permitted Dr. Thomas Oelsner to testify, even though he was not listed as a witness in accordance with the pretrial order.

The court's pretrial order required witness lists to be filed by July 6. Early on the morning of July 7, Dr. Newman's counsel called plaintiff's counsel and advised that he would file a supplemental list naming Dr. Oelsner, and he filed such list before 11:00 A.M. on that same day. Dr. Oelsner had examined the plaintiff on June 25. His report on his examination was furnished plaintiff's counsel on July 8. Plaintiff claims surprise when Dr. Oelsner was called at the trial of July 16.

Rule 16, of the Federal Rules of Civil Procedure, permitting pretrial procedures, can achieve its purpose of improving the quality of justice only if the pretrial requirements entered at the discretion of the trial court are applied with intelligent flexibility, taking into full consideration the exigencies of each situation. The trial judge must be permitted wide latitude in guiding a case through its preparatory stages. His decision as to the extent that pretrial activity should prevent the introduction of otherwise competent and relevant testimony at trial must not be disturbed unless it is demonstrated that he has clearly abused the broad discretion vested in him by Rule 16.

A review of the record fails to reveal any error in permitting Dr. Oelsner to testify in the case against Dr. Newman.

Plaintiff's counsel knew that Dr. Oelsner was a potential witness because of the physical examination, he had the doctor's report available 8 days before trial, and he was given the opportunity to depose the doctor before trial testimony. For us to require that this witness be excluded from testifying by rigid application of the pretrial requirements set at the discretion of the trial judge would thwart the obvious intent of the rules to leave this kind of determination to the sole discretion of the trial judge. Travelers Insurance Co. v. Dykes, 395 F.2d 747 (5th Cir. 1968).

Affirmed.

---

4. Pursuant to Rule 49(a), F.R.Cir.P., special interrogatories were answered by the jury.