Jeffrey YOUNG, Plaintiff-Appellant
Cross-Appellee,

v.

CITY OF NEW ORLEANS, et al.,
Defendants-Appellees,

v.

Howard MARTIN, Keith Perniciaro and
Judy Dowdell, Defendants-Appellees
Cross-Appellants.

No. 83–3433.

United States Court of Appeals,
Fifth Circuit.

Feb. 1, 1985.

Oestreicher, Whalen & Hackett, David Oestreicher, II, Mtumishi St. Julien, New Orleans, La., for Young.

Raymond C. Burkart, Jr., New Orleans, La., for Perniciaro and Dowdell.

Bernette J. Johnson, Graymond Martin, New Orleans, La., for City of New Orleans, et al.

Before THORNBERRY, GARWOOD, and HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge:

This action is brought pursuant to 42 U.S.C. § 1983 for the alleged use of excessive physical force by members of the New Orleans Police Department. On a jury verdict in favor of plaintiff, he appeals arguing that (1) testimony of two medical experts should not have been disallowed, (2) it was error to direct a verdict in favor of defendants on plaintiff's pendent state law negligence claims, (3) the damages awarded were inadequate, and (4) punitive damages should have been awarded. There are cross-appeals claiming there was insufficient evidence to support the jury's finding of a constitutional violation and to justify the damage award; in addition, a cross appeal was taken challenging the dismissal of various counterclaims. For the reasons that follow, we affirm.

## I. *Procedural Background*

Jeffrey Young (Young) brought this action against the City of New Orleans (City), New Orleans Chief of Police Henry Morris (Morris), and police officers Keith Perniciaro (Perniciaro), Judy Dowdell (Dowdell), and Howard Martin (Martin), claiming a deprivation of his civil rights in violation of 42 U.S.C. § 1983. Young also asserted pendent state law claims of negligence against all defendants. Perniciaro and Dowdell counterclaimed for battery, libel, slander, malicious prosecution, abuse of process, and intentional infliction of emotional distress.

At trial the district court dismissed all of the counterclaims except the battery claim. The district court also granted directed verdicts in favor of the City and Morris on the § 1983 claims and in favor of all defendants on the negligence claims. Trial on the remaining claims was to a jury.

On June 30, 1983, judgment was entered on the jury's verdict as follows: in favor of Young and against defendant Martin in the amount of $5,500 on the § 1983 claim; in favor of defendants Perniciaro and Dowdell on the § 1983 claim; and in favor of Young on the battery counterclaim. On June 17, after the jury verdict but before the entry of judgment, Young filed a motion for a new trial on the issue of damages alone; on July 6 the motion was denied. Thereafter Young perfected this appeal.

## II. *Facts*

The facts are highly contested. On April 24, 1981, Young was driving eastward on Interstate 10 in New Orleans. He turned off of the highway and pulled into a parking area of an apartment complex. Young alleges he was then approached by Officer Martin and was beaten without provocation. Young further alleges that he was confined to a police car and "was beaten, cursed, reviled and deprived of proper medical attention" by officers Martin, Perniciaro, and Dowdell.

The officers introduced evidence that on April 24, 1981, Joseph Lucien (Lucien), an employee of the New Orleans Police Department, was traveling on Interstate 10 in a police tow wagon with a vehicle in tow. Lucien testified that he was struck by a black Toyota that was traveling eastbound at a high rate of speed. Lucien reported the accident by radio as a hit and run and gave a description of the vehicle and its driver. Martin was also traveling eastbound on the interstate in his personal vehicle when he heard Lucien state on the radio that he had been struck by a hit and run car; he also heard the description of the vehicle. Martin saw a vehicle matching the description exiting Interstate 10 and called this information to the police dispatcher. He then radioed his location and asked for further assistance.

According to Martin he followed Young's vehicle into a parking lot of an apartment complex. Martin then testified that he pulled in behind Young's vehicle, approached it on foot on the driver's side, showed him police identification and identified himself as a police officer. He attempted to take Young into custody, but Young then refused to be restrained and resisted arrest. At about this time officers Perniciaro and Dowdell arrived at the scene. There was evidence that Martin struck Young during the arrest. There was also evidence that Young was injured and bleeding immediately after the hit and run accident and before Martin encountered him. Young testified that he did not remember anything about hitting the car in tow and claims that all his injuries resulted from the "beating" at the scene of the arrest and when he was transported by Perniciaro and Dowdell to a local hospital.

## III. *Young's Grounds for Reversal*

### 1. Exclusion of Witness Testimony

Young contends that the district court erred in refusing to allow the testimony of two of his medical witnesses, Drs. Hegre and Collins. Young argues that he should have been allowed to call these two witnesses or granted a trial continuance. He cites no precedent for this proposition nor does he point to any facts that would lead us to conclude that the district court

erred in disallowing the testimony of the two expert witnesses.

We will not disturb the district court's ruling, disallowing the witnesses testimony, absent a showing of clear abuse of the broad discretion vested in the district court on this type of issue. *Bennett v. City of Slidell,* 697 F.2d 657, 662 (5th Cir.1983) (citing *Davis v. Duplantis,* 448 F.2d 918 (5th Cir.1971)). In *Slidell,* this Court upheld the trial judge's refusal to allow testimony of a witness that was premised upon, *inter alia,* the fact that the witness was not listed in the pretrial order. Although here Drs. Hegre and Collins were named at the pretrial conference, we nevertheless find that Young's failure to produce medical reports from these witnesses until the eve of trial, when he had been requested to produce them for more than one year prior to trial, provided sufficient justification for the district court's refusal to allow such testimony.

On May 28, 1982, the City requested Young to produce copies of all medical reports prepared in connection with his injuries. The defendants' pretrial inserts, filed February 23, 1983, indicate that Young had failed to supply the medical experts' reports. Moreover, Young's brief on appeal indicates that as of early June 1983 he had still failed to produce such reports. In light of the need of the defendants being in possession of these reports earlier than the eve of trial for the purpose of investigating into the nature and extent of Young's injuries and in preparing for cross examination of the two medical experts, we think the district court acted well within its discretion in refusing to allow the two medical experts to testify.[1]

■ Even if we were constrained to deem the district court's exclusion of the experts' testimony an abuse of discretion, the issue is foreclosed from our consideration as a result of Young's failure to proffer what evidence the experts would have presented. *Foster v. Ford Motor Co.,* 621

F.2d 715, 721 (5th Cir.1980) (citing *Mills v. Levy,* 537 F.2d 1331, 1333 (5th Cir.1976)). The district court's refusal to allow the testimony of Drs. Hegre and Collins was not error.

2. Negligence

■ Young next contends that the district court erred in granting a directed verdict in favor of defendants on his pendent state law negligence claims. Unfortunately, both Young and the defendants have briefed this issue as if the district court dismissed all of these pendant claims for lack of subject matter jurisdiction. On the contrary, in a post-trial opinion the district court explained that it had directed a verdict in favor of the defendants on Young's negligence claims "as no evidence was adduced which would warrant a jury passing on whether the relevant standard of care was breached." The court's grant of a directed verdict poses a question of law for this Court. *Welch v. Heat Research Corp.,* 644 F.2d 487, 489 (5th Cir.1981). In addition, we cannot sustain the directed verdict unless there is a lack of substantial evidence to support a jury verdict, viewing the testimony most favorably to the party opposing the motion. *Dickinson v. Auto Center Mfg. Co.,* 733 F.2d 1092 (5th Cir. 1983).

Young's complaint alleges that the City and Morris were negligent in failing to properly train the police officers and in failing to restrain them from the acts complained of. The specific basis for Young's allegation of negligence against officers Perniciaro and Dowdell is not clear. Our review of the record indicates that Young alleges they were negligent in the way they treated him while he was detained after this incident. Young fails to direct us to evidence in the record nor does our examination of the record reveal any evidence which would support submitting these claims to the jury. Accordingly, the district court's grant of a directed verdict

1. Young was not without medical evidence. A physician testified on his behalf describing the nature and extent of his injuries.

in favor of the City, Morris, Perniciaro and Dowdell was appropriate.

 The district court's entry of a directed verdict against Young on his pendent state law negligence claim against Martin raises a more difficult question. The court submitted to the jury Young's claim of a § 1983 violation by Martin. Arguably the facts which gave rise to this claim might also support Young's negligence claim. Federal civil rights claims, however, have been held inconsistent and incompatible with negligence claims. *Cf. Jones v. McElroy*, 429 F.Supp. 848, 865 (E.D.Pa.1977).[2] Consequently, submitting the § 1983 claim to the jury does not necessarily require submission of a parallel pendent negligence claim.[3] More importantly, Young fails to point to any evidence in the record which would support his negligence claim against Martin. Accordingly, we believe the district court properly entered a directed verdict in favor of Martin on Young's negligence claims.

### 3. Adequacy of Damage Award

 Young next contends that the jury award of $5,500 against Martin on his § 1983 claim was inadequate. Young moved for a new trial on the sole issue of damages and the motion was denied. Although his brief on appeal more closely resembles a jury argument, we will assume that Young is appealing the denial of his motion for new trial. The denial of a motion for new trial on the issue of inadequate damages is a matter of discretion with the trial court and is not subject to review except for abuse of discretion. *Troutman v. Southern Railway Co.*, 441 F.2d 586, 592 (5th Cir.), *cert. denied*, 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971) (citing *Baker v. Dillon*, 389 F.2d 57 (5th Cir.1968)). In addition, we will interfere with the factfinder's award of damages "only in extreme and exceptional cases where the award is 'so gross ... as to be contrary to right reason.'" *Thezan v. Maritime Overseas Corp.*, 708 F.2d 175, 182 (5th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 729, 79 L.Ed.2d 189 (1984) (quoting *Bailey v. Southern Pacific Transportation Co.*, 613 F.2d 1385, 1390 (5th Cir.), *cert. denied*, 449 U.S. 836, 101 S.Ct. 109, 66 L.Ed.2d 42 (1980)).

 Young contends that the damages awarded by the jury were inadequate because they reflect only his out of pocket expenses as of the date of trial and not pain and suffering or future expenses. He then argues, relying heavily upon *Wheatley v. Beetar*, 637 F.2d 863 (2d Cir.1980), that an award for out of pocket expenses alone is grossly inadequate. Even if we accept Young's blanket assumption, unsupported by the record, that the jury awarded him only out of pocket expenses, *Wheatley* is not controlling and the jury's award should not be disturbed.

In *Wheatley*, a § 1983 action, the Second Circuit held that the trial court abused its discretion in denying a motion for new trial where the jury had found police officers liable for an unconstitutional use of force and assessed only $1 in damages. The Court stated that the elements of damages allowable in comparable common law tort actions should guide the courts. Young, in his § 1983 claim, sought to recover not only for physical injuries and pain and suffering, but also for fear, humiliation, anxiety, and mental stress. Under Louisiana law, a comparable common law tort action provides for recovery of comparable elements of damages to those sought by Young. *See Kemp v. Allstate Insurance Co.*, 247 So.2d 142 (La.App.1971) (damages recoverable in assault and battery action); *Meador v. Toyota of Jefferson, Inc.*, 332 So.2d 433, 438 (La.1976) (damages recoverable in action sounding in tort).

2. The court stated that negligence claims "are so inconsistent and incompatible with civil rights claims that they will serve to confuse the jury, and I therefore decline to entertain the negligence claims." 429 F.Supp. at 865.

3. We note that since Young prevailed on his § 1983 claim, it appears that the damages he sought and recovered on that claim would be equivalent to the damages he could recover under a parallel state law claim. In *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), the Supreme Court held that the principle of compensation governs damage awards under § 1983. *Id.* at 257, 98 S.Ct. at 1048. Moreover, in applying that principle, the

court relied upon two important factors. First, based upon the record, the jury could not reasonably have found that Wheatley suffered no compensable pain and suffering from the beating. Second, uncontradicted testimony established that Wheatley's injuries could only have resulted from the beating. This case is distinguishable in both respects. First, the jury awarded more than nominal damages. Thus, the jury award may very well have compensated Young for his injuries. Second, and more importantly, there was conflicting testimony as to the source or cause of Young's injuries.[4] Young and his girl friend eyewitness testified that all his injuries resulted from the altercation with the defendants; officer Martin testified, however, that Young was bleeding from the nose and had blood on his face prior to the altercation. There was also testimony that Young was injured as a result of the automobile accident. Accordingly, *Wheatley* is not dispositive.[5]

We believe that this case is more analogous to *Hall v. Texas & New Orleans Ry. Co.*, 307 F.2d 875 (5th Cir.1962), a personal injury suit brought under the Federal Employers' Liability Act in which the plaintiff claimed the damage award was inadequate. In *Hall*, we upheld the jury award, stating:

> There was a significant question as to the contributory negligence of Hall .... In addition, there was medical testimony that Hall's condition was actually the result of a bone disease and not the result of the accidents in question. Considering all of the testimony, we find no basis upon which to hold the award inadequate.
>
> Juries are not required to believe every expression of opinion by an expert or any other witness. Upon a full review of the record, we find no basis upon which to hold that there was not substantial evi-

dence upon which the jury based its verdict, and it will not be disturbed.

307 F.2d at 880. As in *Hall*, there was conflicting testimony as to the source of Young's injuries. The jury had a right to resolve this issue and its decision as to the corresponding amount of damages cannot be faulted. The record supports the jury's award such that it was not an abuse of discretion for the district court to deny Young's motion for new trial.

### 4. Punitive Damages

Young contends that the district court erred in not granting an award of punitive damages. Once again, however, Young cites no specific error for the purposes of our review. He appears to challenge the correctness of the standard submitted to the jury for an award of punitive damages. The interrogatory dealing with the punitive damage claim asks whether any defendant who deprived Young of his civil rights, "[acted] willfully, intentionally or with callous and reckless indifference to the civil rights of the plaintiff." We are of the opinion that this interrogatory properly stated the standard for awarding punitive damages in a § 1983 action.

In *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983), the Supreme Court set out the threshold test for awarding punitive damages:

> A jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil intent, or when it involves reckless or callous indifference to the federally protected rights of others.

461 U.S. at 56, 103 S.Ct. at 1640, 75 L.Ed.2d at 651. In *Smith*, the Court upheld an instruction almost identical to the

---

**4.** Indeed, in *Wheatley* the court relied upon conflicting evidence as to causation of certain ear damage claimed by Wheatley as the primary basis for its determination that the jury's failure to award damages for the alleged ear injury was not an abuse of discretion.

**5.** For the same reason, our holding in *Hall v. Freese*, 735 F.2d 956, 959 (5th Cir.1984) (jury award was inadequate in light of the strength of evidence presented by plaintiff), is distinguishable.

interrogatory here.[6] Moreover, this Court has since adopted the "reckless or callous disregard" test. *Wells v. Hico Independent School District*, 736 F.2d 243, 259 (5th Cir.1984). Accordingly, the district court's submission to the jury of the interrogatory on punitive damages was not error.

### IV. *Defendants' Cross-Appeals*

#### 1. Martin's Cross-Appeal

 Officer Martin cross-appeals, claiming that the evidence presented by Young was insufficient to support the jury's determination of liability on his § 1983 claim. He contends that Young and his eyewitness were not credible. Martin's brief does not indicate, however, that he moved for directed verdict or that he filed a motion for new trial on the question of liability. Moreover, our review of the record fails to uncover such motions. As a result, we decline to review this issue on appeal.[7] *Bohrer v. Hanes Co.*, 715 F.2d 213, 216 (5th Cir.1983), *cert. denied,* — U.S. ——, 104 S.Ct. 1284, 79 L.Ed. 687 (1984) (a party cannot challenge the sufficiency of evidence on appeal unless a motion for directed verdict is made after presentation of evidence).

#### 2. Perniciaro and Dowdell's Cross-Appeal

Perniciaro and Dowdell filed counterclaims against Young for battery, malicious prosecution, libel, slander, intentional infliction of emotional distress, and abuse of process. The battery counterclaim was based on the alleged actions of Young at the time of his arrest. The other counterclaims were based on allegations concerning the present § 1983 action and on allegations that Young "has filed, on a continuing basis, malicious complaints ... with the FBI, the Justice Department, the New Orleans Police Department of Internal Affairs, O.M.I. and other investigative agencies."

The battery counterclaim was tried to the jury and the jury rendered a verdict in favor of Young. The district court dismissed the rest of the counterclaims for lack of subject matter jurisdiction, stating that

> [i]n the absence of diversity, the only basis for federal jurisdiction over these state law claims is the doctrine of ancillary jurisdiction. C. Wright & A. Miller, *Federal Practice & Procedure* §§ 1409–1410, 3523 (1975). It is clear that the counterclaims for battery arose from the same transaction or occurrence that forms the basis for plaintiff's claim, the battery allegedly having taken place during the course of the arrest in question. The counterclaims for malicious prosecution and defamation, however, arose from actions allegedly taken by the plaintiff in the months that followed the incident in question in the main demand. The factual and legal issues presented by these claims are distinct from those presented in the main demand.

Perniciaro and Dowdell cross-appeal on the dismissal of their counterclaims, arguing that they were compulsory counterclaims over which the district court had ancillary jurisdiction. We believe that these counterclaims failed to state a claim for which relief may have been granted and that the district court properly dismissed the claims.

 In their counterclaims, Perniciaro and Dowdell alleged only that Young had filed complaints with various agencies, and that criminal and administrative investigations were conducted on each occasion. Nowhere is it alleged that any of these actions had been terminated nor that any had been terminated in favor of the defendants. Failing this, the counterclaims were not properly before the district court. It is clear that a cause of action for malicious

---

6. The instruction in *Smith* required that the defendant conducted himself with "a reckless or callous disregard of, or indifference to, the rights or safety of others...." 461 U.S. at 36 n. 5, 103 S.Ct. at 1629, 75 L.Ed.2d at 649 n. 5.

7. Even if we were called upon to evaluate evidence on this issue, we are of the opinion that there was sufficient evidence to support the jury's determination.

prosecution or for defamation arising from allegations in a complaint does not arise until the termination of the particular proceeding which is the basis of the action. *Brown & Root, Inc. v. Big Rock Corp.,* 383 F.2d 662, 665 (5th Cir.1967); *Marionneaux v. King,* 331 So.2d 180 (La.App.1976).

In *Heller v. Namer,* 666 F.2d 905 (5th Cir.1982), a Louisiana diversity case, the defendants counterclaimed for damages caused by the plaintiff's initiation of allegedly improper criminal complaints with state and local authorities. The defendants asserted claims of malicious prosecution, defamation, and abuse of process. This Court found the counterclaims "frivolous", holding that "[b]efore an action for malicious prosecution or defamation stemming from allegations in a lawsuit can be asserted, Louisiana law generally requires that the suit must have terminated." *Id.* at 914. Since Louisiana law would govern the defendants' counterclaims in this action, *Heller* is dispositive and the counterclaims should have been dismissed for failure to state a claim upon which relief could be granted.

 The district court dismissed the counterclaims because it found they were not compulsory. In order to invoke the ancillary jurisdiction of a federal court, the state law counterclaims must be compulsory. *Plant v. Blazer Financial Services, Inc. of Ga.,* 598 F.2d 1357, 1359 (5th Cir. 1979); *see* 13 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3523 at 108 (1984). Perniciaro and Dowdell contend that the counterclaims arise out of the same occurrence as Young's main claim and, therefore, that the counterclaims meet the "logical relationship" test for establishing the compulsory nature of the counterclaims. *See United States v. Aronson,* 617 F.2d 119 (5th Cir.1980).

We need not address their argument, however, because under Fed.R.Civ.P. 13(a), a counterclaim that has not matured at the time the pleader serves his pleading is not compulsory. "A counterclaim acquired by the defendant after he has answered will not be considered compulsory, even if it

arises out of the same transaction as does the plaintiff's claim." 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1411 at 55 (1971). Since the defendants' counterclaims had not matured at the time they served their answer, *see Heller v. Namer, supra,* the counterclaims were not compulsory and thus not within the district court's ancillary jurisdiction. The counterclaims were properly dismissed.

Finding no infirmities in the trial of this case below, the judgment is AFFIRMED.