**William Robert BOOK, et al., Plaintiffs-Appellants,**

v.

**NORDRILL, INC., et al., Defendants-Appellees.**

No. 86–4643.

United States Court of Appeals, Fifth Circuit.

Sept. 18, 1987.

B. Gerald Weeks, Thomas O. Wells, Weeks & Wells, Alexandria, La., for William Robert Book, et al.

Georges M. Legrand, David M. Flotte, Hebert, Mouldedoux & Bland, New Orleans, La., for Oil & Gas.

Before RUBIN, GARZA and JONES, Circuit Judges.

GARZA, Circuit Judge:

William and Linda Book filed this lawsuit against Nordrill, Inc. ("Nordrill"), Oil & Gas Rental Services, Inc. ("Oil & Gas"), and Green-Ward Drilling Company ("Green-Ward"), seeking the recovery of damages for personal injuries sustained by Mr. Book. The Books alleged that Mr. Book was injured when he was ordered by his rig superintendent to assist in the off-loading of steel casing pipe from the M/V Honorine which was tied to the D/B Nordrill Steeler. As Book was aboard the Honorine in the area of the pipe, a large wave enveloped the Honorine causing the pipe to break free. Book's knee was injured when a pipe struck him. At trial, the district court granted a directed verdict in favor of Oil & Gas, and against the plaintiffs on the claim of the unseaworthiness of the Honorine. Subsequently, the jury concluded that Nordrill was 25% negligent, that Green-Ward was 50% negligent, and that Book himself was 25% contributorily negligent. Oil & Gas was found not to have been negligent. The jury assessed total damages in the amount of $25,000.00. The Books raise six challenges to the proceedings undertaken in the trial court. For the reasons that follow, we affirm.

## I. Facts and Proceedings

William Book was employed by Nordrill as a roustabout on the Nordrill Steeler in the Gulf of Mexico. On November 25, 1982, while working aboard the rig, Book and a few other men attempted to off-load pipe from the Honorine which was tied to the Nordrill Steeler. Oil & Gas was the owner and operator of the Honorine. Green-Ward was the drilling consultant which supervised operations aboard the Nordrill Steeler. There is a conflict in the testimony over whether Book was ordered to transfer the pipe or whether he volunteered to off-load the pipe in spite of direct orders to the contrary.

Book and the other roustabouts were lowered by Nordrill's crane to the deck of the Honorine. Prior to and during the attempted off-loading, the sea was turbulent and there was a question whether the off-loading should be delayed until the sea was calmer. While the roustabouts were in the vicinity of the pipe, a large wave cascaded over the Honorine. This wave flooded the portion of the vessel which held the pipe. Book injured his knee when he was struck by the moving steel pipe. None of the other roustabouts were injured.

On February 4, 1983, Book and his wife filed a complaint against the defendants. The Books' claims against Nordrill were based upon the Jones Act, 46 U.S.C. § 688, and for unseaworthiness under the general maritime law. Their claims against Oil & Gas were based on negligence and unseaworthiness under the general maritime law. Plaintiffs settled their negligence claim against Green-Ward prior to trial.

Pursuant to Rule 16(b) of the Federal Rules of Civil Procedure, the district court issued a scheduling order. That order, *inter alia*, required discovery to be completed by January 3, 1986, and required expert medical reports to be furnished to opposing counsel 45 days prior to the pre-trial conference, unless leave of court was otherwise obtained. The scheduling order was enforced against both parties during the litigation. Counsel for plaintiffs objected to defendants' motion for re-deposition of the plaintiffs, and objected to the naming of an economic expert by Oil & Gas. These objections were based upon defendants' failure to comply with the court's scheduling order. The district court enforced the order against defendants, refusing to allow updated depositions of the plaintiffs and refusing to allow defendants to call an economic expert.

Just prior to trial and without notice to defendants, Book was re-examined by one of his medical experts, Dr. Cedric W. Low-

ery. The doctor's updated report showed a new diagnosis of chondromalacia. The defendants were given a copy of this report on the last business day prior to trial. On the day of trial, Oil & Gas filed a motion in limine to oppose the introduction of Dr. Lowery's deposition into evidence on the basis that plaintiffs violated the court's scheduling order. As it previously did against defendants, the court enforced its scheduling order against plaintiffs and excluded a portion of Dr. Lowery's testimony. The court limited Dr. Lowery's opinion to examinations performed prior to May 14, 1986. The jury was still presented with the testimony of plaintiffs' witness, Dr. James L. Zum Brunnen, in addition to the limited testimony of Dr. Lowery.

On May 27, 1986, a three-day jury trial began. At the conclusion of plaintiffs' case-in-chief, the court granted Oil & Gas' motion for a directed verdict on the issue of the Honorine's unseaworthiness. At the conclusion of the trial, the jury found that Oil & Gas was not negligent, and that the Nordrill Steeler was not unseaworthy. The jury further found that Nordrill, Green-Ward and Book were negligent regarding the events of the off-loading of the pipe. According to the jury, the negligence of Green-Ward contributed 50% to Book's injuries, while the negligence of Nordrill and Book each contributed 25% to Book's injuries. Additionally, the jury found that the Books failed to prove any future wage loss or future medical expenses, and assessed damages in the amount of $25,000.00. The court entered judgment in accordance with the jury verdict, and subsequently denied plaintiffs' motion for a new trial.

## II. Discussion

We must address first the question whether the district court erred in striking a portion of the testimony of Dr. Lowery. The Books argue that the district court abused its discretion in enforcing its scheduling order against them. They complain that the court's action prevented the jury from hearing about Book's present condition, future medical costs and future lost wages. They further claim that Book is going to require surgery in the future to correct the injuries he sustained.

The record shows that Dr. Zum Brunnen, Book's treating physician, conducted diagnostic arthroscopic examinations on Book in 1982 and 1983. Dr. Zum Brunnen testified that Book was able to perform manual labor as of October 2, 1983, and that no additional medical procedures were warranted as of September 21, 1984. Moreover, it was established that Book returned to his primary occupation as a long-haul truck driver for a period of two years and five months prior to the date of trial.

Thirteen days prior to trial, counsel for the Books had Mr. Book examined by Dr. Lowery without any notice to defendants. This examination was performed five months after the close of discovery. This action by plaintiffs' counsel was undertaken without regard to the court's scheduling order. In addition, counsel for the Books did not disclose the report to defendants until the last business day prior to trial when Dr. Lowery's deposition was taken on the morning of May 23, 1986. Defendants' counsel timely objected to this report, claiming that they were unfairly surprised and not given the opportunity to controvert the new diagnosis of chondromalacia. Book had not seen a doctor for twenty months prior to Dr. Lowery's examination.

The issue is whether the district court exceeded the wide latitude accorded it pursuant to Rule 16 of the Federal Rules of Civil Procedure. Courts have discretion with regard to the curtailment of discovery. *See Aviation Specialties, Inc. v. United Technologies Corp.*, 568 F.2d 1186, 1189 (5th Cir.1978). Rule 16 gives a trial judge wide latitude in governing the proceedings, and can only be modified upon a showing of manifest injustice. *See* Fed.R. Civ.P. 16(e); *Burdis v. Texas & Pac. Ry. Co.*, 569 F.2d 320, 323 (5th Cir.1978); *Davis v. Duplantis*, 448 F.2d 918, 921 (5th Cir. 1971).

Both parties agree that *Young v. City of New Orleans*, 751 F.2d 794 (5th Cir.1985), is the law in this circuit and bears on the outcome of this disposition. *Young* in-

volved a personal injury case wherein plaintiff's counsel failed to disclose reports from two medical experts until the eve of trial. *Id.* at 797. The district court in *Young* excluded the testimony of the physicians in light of the need of the opposing party to investigate the nature and extent of the injuries. *Id. Young* is similar to the present case in that Books' counsel failed to disclose the report until the last business day prior to trial. Further, in both cases the plaintiffs' claims were supported by other physicians who were prepared and did testify on their behalf. In the present case the jury considered the complete testimony of Dr. Zum Brunnen and the limited testimony of Dr. Lowery regarding all examinations of Book other than the May 14, 1986 examination.

The parties cite an additional case, *Davis v. Duplantis*, 448 F.2d 918 (5th Cir.1971), but we find that authority distinguishable from the present controversy. *Davis* involved a situation where a medical report was furnished to opposing counsel eight days prior to trial. *Id.* at 921. Thus, no prejudice was shown because the objecting party had sufficient time to review the report and prepare for its introduction to the jury prior to trial. As this Court stated in *Davis*, Rule 16's requirements are within the sound discretion of the trial court and must be "applied with intelligent flexibility, taking into full consideration the exigencies of each situation." *Id.* Although this Court found the doctor's testimony admissible because of the exigencies of the case, we are not inclined to find that Judge Little was required to be as flexible regarding Dr. Lowery's testimony in this case. In fact, Judge Little acted fairly to both parties as he had previously enforced the scheduling order against the defendants. Based on our study of the record it has not been established that Judge Little abused the broad discretion vested in the court by Rule 16.

■ Counsel for plaintiffs could have asked for leave of court to introduce the results of the tardy examination as was provided in the scheduling order. However, counsel chose instead to not disclose

Dr. Lowery's report, and consequently this would have given plaintiffs an unfair tactical advantage to the detriment of defendants. Because defendants would have been unduly prejudiced by the introduction of this new diagnosis, and because the district court had issued a valid scheduling order which was previously enforced against defendants, the court's enforcement of its scheduling order as to the plaintiffs was proper. *See Young*, 751 F.2d at 797; *Davis*, 448 F.2d at 921.

The second challenge presented by the Books is that the district court erred in allowing testimony concerning defendants' economic condition and the oil industry in general. Over objection, defendants elicited testimony concerning the depressed condition of the oil and gas industry. For instance, the defense presented evidence that Nordrill owned five drilling vessels, but that at the time of trial only two of the vessels were in operation. The Books complain that this testimony was highly prejudicial and improperly influenced the jury in its damages award.

■ We hold that the district court did not commit error in allowing this testimony. Evidence concerning the economic conditions in the oil industry and to defendants in particular was relevant to the jury's determination of whether Book could have continued as a maritime worker in the absence of his accident. *See* Fed.R.Evid. 401. This consideration was important to the determination of whether Book suffered any loss of future wages. For that fundamental reason it cannot be said that the court committed error.

The Books' next contention is that the district court erred in failing to grant a new trial on the issue of loss of future earnings. The decision to grant or deny a motion for a new trial is generally within the sound discretion of the trial court. A court of review may only reverse the lower court if it finds that it abused its discretion. *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir.1982).

■ The jury did not award any damages for future loss of wages. The record establishes that there was ample evidence

for the jury to conclude that Book suffered no loss of future earnings. Prior to and subsequent to his injury, Book's main occupation is that of a long-haul truck driver. He had been employed as a truck driver for two years and five months prior to the date of trial. He has made as much as $35,000 to $47,000 per year as a truck driver. His earnings as a maritime worker were less than his earnings as a truck driver. Given these facts, the jury's failure to grant plaintiffs an award for future loss of wages was supported by the evidence. Consequently, we believe that the district court did not abuse its discretion in denying plaintiffs' motion for a new trial on this issue.

The fourth issue raised by the Books is whether the jury correctly found that Book was 25% contributorily negligent in off-loading the steel casing. Counsel for the Books writes in its main brief on appeal: "There was absolutely no evidence or testimony to support the finding by the jury that William Robert Book was guilty of any negligence in any manner." Counsel made a similar assertion at oral argument. Counsel's representations to the contrary are disingenuous at best considering the numerous references in the record and substantial evidence supporting the jury's conclusion.

■ The sea was rough at the time of the off-loading. The captain of the Honorine told some of the men that they should wait until the sea was calmer before off-loading. Gus Burnett, the toolpusher for Nordrill, told all of the men, including Book, that the operation should be shut down because of the condition of the sea. Although the evidence is in conflict, there was testimony that Book volunteered to board the Honorine after he was cautioned not to do so. After Book had injured his leg, he was brought back aboard the Nordrill Steeler where Mr. Burnett spoke to him. Burnett told Book that he may have engaged in safety violations, and asked Book who told him to board the Honorine. Burnett testified that Book replied, "nobody told me to go on the boat, I volunteered." Further, when the wave cas-

caded onto the Honorine, there was testimony that the other roustabouts ran to an area of safety behind the pipe rack, whereas Book remained in the area of the pipe.

It is settled law that this Court is bound to give deference to the factual findings and credibility evaluations of the jury in a negligence action. Our study of the record indicates that there was ample evidence for the jury to conclude that Book was contributorily negligent by volunteering to board the Honorine and to continue off-loading after being warned against it. His negligence was also established by the showing that he did not seek safety as the other roustabouts did when the large wave fell over them.

■ The fifth challenge raised by appellants is that the district court erred in failing to grant a new trial on the issue of damages. The jury found that the total amount of the Books' damages was $25,-000.00. It is well-established that a jury has great discretion in determining and awarding damages in an action for personal injuries. "The denial of a motion for new trial on the issue of inadequate damages is a matter of discretion with the trial court and is not subject to review except for abuse of discretion." *Young,* 751 F.2d at 798 (citations omitted). In cases of an extreme and exceptional nature where the award is " 'so gross ... as to be contrary to right reason' or a 'clear abuse of discretion with respect to assessment of damages' will this Court overturn a jury's decision that has been approved by the trial judge." *Bailey v. Southern Pac. Transp. Co.,* 613 F.2d 1385, 1390 (5th Cir.), *cert. denied,* 449 U.S. 836, 101 S.Ct. 109, 66 L.Ed.2d 42 (1980).

■ Defense counsel elicited substantial testimony concerning Book's medical condition and present health status. Given the fact that he had returned to gainful employment, appeared to have recovered at the time of trial, and that plaintiffs' counsel was unable to establish any more damages based on the facts, it is evident that the damages awarded by the jury were not so gross as to be contrary to right reason. For instance, in *Brooks v. Great Lakes*

*Dredge-Dock Co.*, 754 F.2d 539 (5th Cir. 1985), the jury awarded $23,000 in damages sustained by plaintiff, a Jones Act seaman, who underwent two operations to his foot and suffered residual pain. The record supports the jury's award such that it was not an abuse of discretion for the district court to deny the Books' motion for new trial.

The final issue that we address is whether the district court erred in directing a verdict in favor of Oil & Gas regarding the issue of the unseaworthiness of the Honorine. Although appellants' counsel fails to present this issue in the appropriate section of its brief, it is mentioned in the summary of the argument section of its brief, and thus we feel compelled to address it notwithstanding counsel's lack of organization. "[W]e cannot sustain the directed verdict unless there is a lack of substantial evidence to support a jury verdict, viewing the testimony most favorably to the party opposing the motion." *Young*, 751 F.2d at 797 (citation omitted).

■ Book was employed by Nordrill as a roustabout aboard the Nordrill Steeler. Book was never permanently assigned to the Honorine, and was not a seaman or member of the crew of the Honorine. Therefore, Book has no remedy for unseaworthiness as to Oil & Gas or the Honorine. *See Dove v. Belcher Oil Co.*, 686 F.2d 329, 332 (5th Cir.1982); *Burks v. American River Transp. Co.*, 679 F.2d 69, 76 (5th Cir.1982).

In addition to the lack of permanent assignment, the Books could only recover under this claim if they showed that the Honorine was not reasonably fit for its intended purpose. The Honorine transported supplies to the Nordrill, as it was supposed to do. The Honorine had no responsibility for off-loading. It is clear that the Honorine was fit for its intended purpose because it did transport the steel casing pipe to the Nordrill Steeler. Therefore, appellants' tenuous claim regarding the unseaworthiness of the Honorine must also fail.

### III. Conclusion

All of the challenges presented by the Books on appeal lack merit. The verdict of the jury and the judgment of the district court is

AFFIRMED.