**In the Matter of TRIPLE E TRANSPORT, INC.**

**TRIPLE E TRANSPORT, INC., Appellant,**

v.

**CATERPILLAR INC., Appellee.**

Civ. A. No. 93–3039.

United States District Court, E.D. Louisiana.

June 13, 1994.

Douglas Scott Draper, Draper & Culpepper, New Orleans, LA, for Triple E Transport, Inc.

Emile Louis Turner, Jr., Turner, Young, Hebbler & Babin, New Orleans, LA, for Caterpillar Inc.

## ORDER AND REASONS

FELDMAN, District Judge.

This is an appeal by Triple E Transport, Inc. (TET) from a judgment of the bankruptcy court. The bankruptcy court denied TET's motion to upset and disallow a settlement agreement with Caterpillar, Inc. The court approved the agreement between Triple E Transport and Caterpillar. For the reasons that follow, the bankruptcy court is AFFIRMED.

### I. Background

The facts are undisputed. TET is in the trucking business. Between February and May 1990, TET purchased ten trucks from Freightliner Corporation; the trucks contained engines produced by Caterpillar, Inc. On December 31, 1991 TET filed for Chapter 11 relief in bankruptcy.

Meanwhile, the ten trucks experienced many mechanical problems. Caterpillar admitted the engines were having problems and provided warranty repairs and replacement trucks. Caterpillar replaced six of the ten engines. Louisiana Machinery Company performed the mechanical and warranty repair work for Caterpillar on trucks in the New Orleans area.

Despite Caterpillar's attempt to remedy the problems with the engines, TET's trucks continued to have mechanical problems. Beginning in April 1992, TET and Caterpillar entered negotiations to settle the dispute. The president of TET, Eric Windstein, represented TET in the negotiations and turned over all correspondence with Caterpillar to his attorney. Caterpillar made an offer to replace the remaining four engines and to increase the warranty coverage on all ten of the replacement engines. By letter dated May 21, 1992, Windstein's counsel advised Windstein that any settlement would require court approval. The negotiations were extensive: at least two offers and counteroffers were discussed. For example, on May 26, 1992, Windstein made a counteroffer to Caterpillar, the substance of which required Caterpillar to pay TET's costs that were incurred by the engine breakdowns—hotel charges, transportation fees, and wrecker fees.

On July 16, 1992, approximately five months after negotiations began, a compromise agreement entitled "General Release" was entered into and signed by Windstein. Under the terms of the agreement Caterpillar agreed to (1) replace four of the engines that had not previously been replaced, (2) increase the warranty coverage on the remaining six engines, and (3) pay TET $3,920 in cash. Windstein, however, did not seek court approval of the settlement.[1]

Windstein was indeed well-informed about the problems with Caterpillar's engines. He testified that at the time he signed the agreement he thought it was a good settlement and he wanted to get TET's trucks operating again. In addition, Windstein was aware of the causes of the mechanical problems with Caterpillar's engines; for instance, Windstein knew that the electrical system, injectors, and head gaskets of some of the engines were not functioning properly. One month after the settlement, Windstein learned that one engine had problems with the spacer deck,[2] a problem that was not covered by Caterpillar's warranty. Finally, immediately prior to the hearing on the motion to upset and disallow the settlement, Windstein also

---

1. The bankruptcy court could not determine the precise reason for Windstein's failure to seek court approval. The bankruptcy judge stated Windstein's failure could have resulted from "inadvertence, miscommunication, or some other unidentified reason."

2. The parties use "spacer deck" and "spacer block" synonymously. This Court prefers "spacer deck."

learned that other trucks with Caterpillar engines had spacer deck problems as well. He now believes the settlement was not a good one.

TET filed a motion to upset and disallow the settlement agreement. That same day, pursuant to bankruptcy Rule 2004(c),[3] the bankruptcy judge ordered Louisiana Machinery to turn over the documents which described the warranty work Louisiana Machinery did on Caterpillar's engines. Thereafter, the parties filed a joint motion to continue the hearing to allow for the completion of discovery; the hearing was rescheduled for March 18, 1993.

At the March 18 hearing, TET raised for the first time the issue of fraud on the part of Caterpillar.[4] The bankruptcy judge thoughtfully permitted TET to develop this argument, even though TET never asserted the claim in writing. According to TET, Caterpillar concealed the fact that the engines had spacer deck problems, a condition not covered by the warranty included in the settlement. Caterpillar countered that lack of maintenance, not a spacer deck problem, caused the engines to breakdown. A witness for Caterpillar testified that of some 2000 engines similar to those used by TET, none had spacer deck problems.

Moreover, at the March 18 hearing, TET also orally requested another continuance because Louisiana Machinery had allegedly failed to timely produce the requested documents. The record indicates that Louisiana Machinery turned over the requested documents a week or at least a few days before the March 18 hearing. On July 14, 1993, the bankruptcy court denied TET's motion, rejected TET's fraud claim, and approved the settlement agreement. This appeal followed.

## II. Law and Application

■ On appeal to the district court, findings of fact made by the bankruptcy court shall not be set aside unless clearly erroneous. This Court reviews conclusions of law de novo. Bankr.R. 8013; *In re Delta Towers, Ltd.,* 924 F.2d 74, 76 (5th Cir.1991); *In re Missionary Baptist Found. of Am.,* 818 F.2d 1135, 1142 (5th Cir.1987).

In this appeal, TET challenges the bankruptcy court's denial of their motion for continuance and the court's decision to approve the settlement agreement between TET and Caterpillar.

## III. Denial of the Motion for Continuance

■ TET argues that the bankruptcy judge abused his discretion in denying TET's motion for continuance because Louisiana Machinery was responsible for TET's need for a continuance in that it failed to turn over important documents until shortly before the hearing on TET's motion to upset or disallow the settlement. TET also argues that the documents turned over to TET contained information critical to TET's contention that Caterpillar withheld information regarding the true problem with the Caterpillar engines.

The court did not state why it denied TET's motion for a continuance. Nevertheless, this Court finds that the relevant law[5] as applied to the facts of this case compel the conclusion that the bankruptcy court did not abuse its discretion in denying TET's motion for a continuance.

■ "The grant or denial of a continuance is within the sound discretion of the Trial Judge." *Crompton–Richmond Co., Inc., Factors v. Briggs,* 560 F.2d 1195, 1202 (5th Cir.1977); *accord Rhodes v. Amarillo Hospital Dist.,* 654 F.2d 1148, 1153 (5th Cir.1981); *Woods ex rel. Woods v. International Harvester Co., Inc.,* 697 F.2d 635, 639 (5th Cir. 1983); *see generally* 9 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2352 (1971). This Court reviews a denial of a continuance under an abuse of

---

**3.** Rule 2004(c) provides that the bankruptcy court may compel the "production of documentary evidence ... in the manner provided in Rule 9016," the subpoena provision of the Bankruptcy Rules.

**4.** In their moving papers, TET claimed that the settlement should be undone because the settlement was not approved by the bankruptcy court, TET did not consult with counsel before entering into the settlement, and TET entered the agreement under substantial economic duress.

**5.** TET cites no relevant authority regarding the standards for reviewing denials of continuances.

discretion standard. *Roberts v. Williams,* 456 F.2d 819, 824 (5th Cir.), *cert. denied sub nom. Roberts v. Smith,* 404 U.S. 866, 92 S.Ct. 83, 30 L.Ed.2d 110 (1971); *Thompson v. J.D. Fleming,* 402 F.2d 266, 267 (5th Cir.1968).

In *Briggs,* the Fifth Circuit rejected a claim similar to that made by TET in this case. 560 F.2d at 1202. There, the plaintiff filed false statements under oath and displayed a "deplor[able] attitude toward requests for information." *Id.* Even though the defendant did not discover the deceitful nature of the plaintiff's conduct until shortly before trial, the Fifth Circuit held that the district court did not abuse its discretion in denying the defendant's motion for a continuance. *Id.* Important to the *Briggs* decision was the fact that the defendant obtained the necessary information despite the district court's denial of the continuance. *See also Woods,* 697 F.2d at 639 (no error where trial court denied request for continuance because the complaining party was able to obtain the sought-after information).

In the present case, TET is claiming that the bankruptcy court abused its discretion because Louisiana Machinery waited until the eleventh hour to turn over documents which arguably indicated that Caterpillar may have fraudulently induced TET into a settlement agreement. However, as in *Briggs,* the denial of TET's motion for a continuance did not deprive TET of the information. It is undisputed that Louisiana Machinery turned over the information a week or a few days before the bankruptcy judge denied TET's motion for a continuance.

It is useful to recall that TET had knowledge of the spacer deck problems at least one month after the settlement, when Windstein learned that one engine supposedly had problems with the spacer deck, a problem not covered by Caterpillar's warranty and a problem TET claims was concealed by Caterpillar. Moreover, prior to trial, Windstein was told that other engines also had spacer deck problems. In short, the information

obtained by TET prior to the hearing date regarding Caterpillar's alleged fraud is essentially the same information TET claims they were denied by Louisiana Machinery's so-called delay in turning over requested documents.

Further, "a continuance may properly be denied when the ... request for a continuance was not made until the last minute...." Wright & Miller § 2352 (footnote omitted). In this case, TET waited until the day of the hearing on the motion to upset and disallow the settlement to orally request a continuance. Even if one assumes TET received the requested documents from Louisiana Machinery only a few days before the hearing on TET's motion, TET could have sought a continuance sooner than the day of the hearing.[6] TET understood that the documents were important to their motion to upset and disallow the settlement, a fact made clear in TET's brief in this Court. Thus, a cursory examination of the documents would have revealed the need (if in fact there was a need) for a continuance. TET asserts no justification for the delay in seeking a continuance between the time they received the documents from Louisiana Machinery and the hearing date.[7]

TET ignores the relevant authorities and instead relies on *Young v. City of New Orleans,* 751 F.2d 794 (5th Cir.1985). *Young,* however, is distinguishable on its facts. In *Young,* the Fifth Circuit affirmed the district court's refusal to allow two of the plaintiff's medical experts to testify at trial. The plaintiff in *Young* turned over the medical records in possession of the medical experts on the eve of trial, records requested almost one year prior to trial. *Young,* however, has no application here because there is no claim that TET, like the plaintiff in *Young,* improperly delayed turning over information to the opposing party and then subsequently sought to benefit from that delay. The entire basis of TET's motion to continue was that Louisiana Machinery had stonewalled TET during

---

6. Of course, if TET received the documents one week before the hearing, this Court's conclusion that TET could have filed a motion for continuance prior to the day of the hearing is even stronger.

7. The bankruptcy judge granted one continuance, giving the parties an extra month to complete discovery.

the final stages of discovery. Louisiana Machinery's conduct did not prejudice TET.

The Court finds that the bankruptcy judge did not abuse his discretion in denying TET's motion for a continuance.

## IV. *The Bankruptcy Court's Approval of the Settlement Agreement Between TET and Caterpillar*

TET asserts that the bankruptcy court erred in approving the settlement because notice was not given to the creditors. TET further claims the bankruptcy court erroneously found that TET failed to meet their burden of proving fraud and error. This Court rejects both contentions.

### A. *Notice to Creditors*

■ Bankruptcy Rule 9019(a) provides:

On motion by the trustee and after a hearing on notice to creditors, the debtor and indenture trustee as provided in Rule 2002(a) and to such other entities as the court may designate, the court may approve a compromise or settlement.

Rule 2002(a)(3) provides:

. . . the clerk, or some other person as the court may direct, shall give the debtor, the trustee, all creditors and indenture trustees not less than 20 days notice by mail of . . . (3) the hearing on approval of a compromise or settlement of a controversy, *unless the court for cause shown directs that notice not be sent. . . .*

(Emphasis added). The purpose of the notice requirement of Rule 2002 is to provide parties with a pecuniary interest in the settlement an opportunity to object to a settlement agreement that is unsatisfactory. *See, e.g., In re Masters, Inc.,* 149 B.R. 289, 293 (E.D.N.Y.1992).

■ TET contends that Rule 2002 requires the bankruptcy judge to meet the 20–day notice requirement. But the Rule 2002 notice is not mandatory. Other courts have given Rule 2002 a similar reading. *See In re Thompson,* 965 F.2d 1136, 1140–41 n. 5 (1st Cir.1992); *In re Stumpff,* 109 B.R. 1014, 1017 (Bankr.E.D.Okla.1989); *In re Glinz,* 66 B.R.

88, 91 (D.N.D.1986); *In re Patel,* 43 B.R. 500, 503–04 (N.D.Ill.1984). TET's contention is therefore without merit.

■ Moreover, the bankruptcy judge had good cause to waive the notice requirement of Rule 2002.[8] First, Windstein was aware, through advice from counsel, that any settlement agreement must be approved by the bankruptcy court. Second, TET waited five months before moving to upset and disallow the settlement agreement between Caterpillar and TET. In that five month period, the parties complied with the terms of the settlement agreement. Finally, the bankruptcy judge determined that it would be unduly burdensome and complex to return the parties to their original position. For example, TET made use of the four new engines included in the settlement, thereby making it impossible for Caterpillar to recoup new engines.

This Court concludes that the bankruptcy court did not abuse its discretion in determining that the notice requirement of Rule 2002 had been waived.

### B. *The Fraud and Error Claim*

■ A settlement agreement is a contract and is governed by rules of contractual interpretation. *In re Am. Plastics Corp.,* 102 B.R. 609, 611 (Bankr.W.D.Mich.1989). Any agreement reached must be fair, equitable, and in the best interests of the estate. *In re Am. Reserve Corp.,* 841 F.2d 159, 161 (7th Cir.1987). A settlement agreement may be set aside for mistake of fact, fraud, or unconscionable advantage. *In re Am. Plastics Corp.,* 102 B.R. at 611.

TET suggests that this Court should look to post-settlement developments to determine whether the settlement is in the best interests of the estate. In this case, TET continues, Caterpillar obtained TET's consent through fraud, thereby undermining the bankruptcy court's conclusion that the settlement was in the best interests of the estate. TET's argument is unpersuasive. It seems betrayed by the record.

---

**8.** Even though the bankruptcy judge did not expressly make findings of good cause pursuant to Rule 2002(a)(3), this Court may find that the

bankruptcy judge had good cause to waive the notice requirement. *In re Patel,* 43 B.R. at 503.

TET and Caterpillar negotiated for five months before reaching a settlement that was agreeable to both sides. During the course of arms-length negotiations, offers and counteroffers were exchanged. In the end, Windstein's business was up and running again and Caterpillar agreed to replace the remaining four engines, extend the warranty coverage on the remaining six engines, and give TET $3,920 in cash for TET's out-of-pocket expenses. Five months after the settlement, however, TET decided that it was a bad deal because of alleged fraud on the part of Caterpillar. The bankruptcy court considered TET's evidence of fraud and concluded that TET had not met their burden of proof.

 This Court finds no reason to substitute its judgment for that of the bankruptcy court and undo an otherwise equitable settlement. The bankruptcy court weighed TET's claim that Caterpillar concealed the fact that the engines suffered from spacer deck problems against Caterpillar's evidence that lack of maintenance caused the engines to malfunction. The judge did not determine the cause of the malfunctioning, but held that TET had not met their burden of proof. Ample evidence supports this conclusion. There was no abuse of discretion.[9]

 Indeed, if this Court accepted TET's suggestion, every settlement agreement would be vulnerable to attack in the event the settlement becomes disadvantageous to one side. *In re Erickson,* 82 B.R. 97, 101–02 (D.Minn.1987) (look to the time at which the settlement was entered into to determine whether the settlement agreement is in the best interests of the estate). Settlement requires parties to weigh the relative risks and benefits of avoiding trial. In the process of negotiation, both sides give and take; compromise is the centerpiece of settlement. By resolving disputes outside of court, valuable court time and resources are conserved. To be sure, settlements may be set aside when extraordinary circumstances warrant such action. *See, e.g., id.* at 101. But for a court

to step in and unpack the results of an otherwise objectively fair settlement operates to discourage parties from resolving their disputes outside of court, a result flatly at odds with the strong public policy of encouraging settlement. *See, e.g., Ingram Corp. v. J. Ray McDermott & Co.,* 698 F.2d 1295, 1321 (5th Cir.1983); *In re Jackson Brewing Co.,* 624 F.2d 599, 604–05 (5th Cir.1980). In addition, judicial interference with a fair settlement undercuts risk assessment because parties will enter settlements with the knowledge that if the bargain reached becomes unsuitable, the settlement can be undone. This is not the law. *Id.*

Accordingly, this Court finds that the bankruptcy court did not abuse its discretion in approving the settlement between TET and Caterpillar.

### Conclusion

For the foregoing reasons, the bankruptcy court is AFFIRMED.

---

9. The bankruptcy judge also rejected TET's claim that economic duress is a sufficient justification for upsetting a settlement. *See, e.g., Shepherd v. Allstate Ins. Co.,* 562 So.2d 1099, 1101 (La.Ct. App.1990) ("The claim of financial straits does not give rise to duress."). TET has not challenged this finding on appeal. The issue is therefore deemed abandoned.