George L. ROUNDTREE, a minor, et al., Plaintiffs,

v.

SEABOARD COAST LINE RAILROAD COMPANY, a Virginia Corporation, Defendant.

Civ. A. No. 73–569.

United States District Court, M. D. Florida, Tampa Division.

Aug. 17, 1976.

Jesse D. Henry, Henry, Stroemer & Harrington, Miami, Fla., for plaintiffs.

Sam H. Mann, Jr., John M. Elias, Harrison, Greene, Mann, Rowe & Stanton, St. Petersburg, Fla., for defendant.

## MEMORANDUM

JOHN L. MILLER, District Judge, Sitting by Assignment.

This wrongful death action resulted in a jury verdict for defendant Seaboard Coast Line Railroad (Seaboard). The several plaintiffs have filed a motion for a new trial. Plaintiffs' theory of liability, sounding in negligence, is that defendant maintained inadequate lighting signals and other warning devices so as to improperly notify a motorist of an approaching train. They also contend that the subject railroad crossing and the immediate area surrounding it (roadway direction, terrain features, etc.) constituted a hazardous condition of which Seaboard had prior notice and failed to take precautionary corrective measures. We preface our discussion of the issues raised by said motion with the following summary of the relevant facts.

The instant action had its tragic genesis in a train-truck collision that occurred in the morning hours of June 14, 1973 several miles east of Zephyr Hills, Florida. Maple Roundtree, the several plaintiffs' decedent and operator of a 1971 Chevrolet pick-up truck, was traveling east on state highway 54 with three of her minor children. The collision resulted in the death of Mrs. Roundtree.

The trial disclosed undisputed evidence that the accident took place sometime between 8:30 and 9:00 A.M. The weather was very clear and sunny, the roadway dry. The evidence also demonstrated that one traveling east at that time of the morning would be driving directly into the path of the rising sun. Thus a bright morning would serve to impair the vision of an east-bound motorist.

A few miles east of Zephyr Hills state highway 54 intersects with north-south bound railroad tracks owned by Seaboard. The speed limit on highway 54 was posted at 65 miles per hour. There was testimony supporting a conclusion that Mrs. Roundtree was traveling at or near that speed when the mishap took place. The roadway was straight and the area along its borders fairly wide open. Skid marks on the roadway from the Roundtree vehicle measured 60 to 70 feet.

There was a round disk sign indicating "RR" for railroad stationed approximately 600 feet west (and east) of the crossing. Similar railroad indicators were painted on the highway pavement well in advance of the crossing over which motor vehicular traffic must travel. Additionally, at the crossing there were two standard railroad crossbucks (one on each side of the highway) that provided signal lights which were reflectorized and also flashed when a train was nearing the crossing. While the evidence is in dispute as to whether these lights were flashing at the time of the subject accident (or when they began to flash) we must presume, as the jury found, that they were operating normally. The record also reflects that the decedent was familiar with the roadway and crossing.

It was brought out that a stand of trees on the northern side of the roadway somewhat impeded the vision one traveling east had of an approaching southbound train. However Trooper Marshall, who assisted in the investigation of this accident, stated that at a point 300 feet west of the crossing a fairly good northerly view of the track could be had. He could not state however how far up the track an eastbound motorist could see from a point 300 feet west of the crossing. The foregoing evidence is corroborated by Trooper Welden, the Florida

Highway Patrol officer who was in charge of the investigation.

Later in the trial it was established that an eastbound motorist would be 256 feet from the crossing when a clear and unobstructed view could be had of a southbound train situate at a point 150 feet north of the intersection with highway 54. For the limited purpose of eliciting an expert opinion it was stipulated by counsel that the Roundtree truck was traveling 65 miles per hour and the train 42 miles per hour. With these factors plaintiffs' expert, Mr. Delton Dollar, testified that the average motorist would need a stopping distance of 282 feet or 26 feet more than allowed by the stand of trees which obstructed one's view of the northern section of track.

It was learned on cross-examination of Mr. Dollar that a train could be viewed by an eastbound motorist from a point more than 256 feet west of the crossing but such a view would be partially obstructed. Mr. Dollar conceded that, had Mrs. Roundtree been traveling 60 or 55 miles per hour and seen the train at the point 256 feet west of the intersection, she would have been able to stop before engaging the crossing. He also stated that if, as Seaboard maintained, the flashing lights were properly triggered by the approaching train, Mrs. Roundtree would have been warned over ½ mile away from the crossing. Seaboard also introduced into evidence a Florida statute that required motor vehicle operators to *slow down* when nearing railroad crossings, notwithstanding the posted speed limit.

While the Court firmly believed that the evidence offered at trial strongly favored Seaboard we permitted the case to go to the jury. After a lengthy charge—to which no exceptions were taken by the plaintiffs—the jury, after deliberating a very short time, returned a verdict for Seaboard.

Pursuant to Rule 59 of the Federal Rules of Civil Procedure plaintiffs have moved for a new trial. While the motion advances six separate grounds we were advised by counsel at argument that only two survive.

■ First plaintiffs contend that the verdict is against the weight of the evidence.

At the time of trial we believed plaintiffs' case to be rather weak. After reviewing our notes of the testimony our views have not changed. Except for Mr. Dollar's testimony plaintiffs' case rested primarily on the testimony of John Mayo who said the flashing lights were not working until the train was on the crossing. He further stated that he heard no whistle, horn or bell sound. In response to Mayo's version of what happened Seaboard offered five witnesses all of whom stated either that the whistle blew or the lights flashed, or both. The resolution of these disputed questions is for the fact finder. The evidence supports the jury's finding and we shall not disturb it. Plaintiffs simply did not prove by a preponderance of the evidence that Seaboard failed to maintain or execute adequate warning devices.

The second basis for this motion is plaintiffs' contention that we erred in refusing to permit reading into evidence plaintiffs' interrogatories 95 and 96 and Seaboard's answers thereto which are set out below:

95. Have there been any other collisions between automobiles and your trains at the crossing within the past five years?

*Yes.*

96. If so, state:

(a) The name and address of the driver of each automobile involved in an accident at this crossing.

*Cyrus M. Schanz, Rt. 1, Zephyr Hills; Forest J. McConnell, 63 New York Street, Zephyr Hills, Fla.*

(b) The name and address of each person who was injured in each such accident.

*Schanz and Emma C. Moore, and Forest J. McConnell, Howard G. Kenyon, Dorothy Kenyon and Helen McConnell.*

(c) The name of each person killed in each such accident.

*Schanz, Moore, McConnell and Kenyon.*

(d) The date of each accident.

*June 6, 1972, and April 4, 1971.*

(e) The approximate time of each such accident.

*11:58 a. m. and 12:13 p. m.*

(f) The weather conditions that prevailed at the time of each such accident.

*Clear on the prior accident, and cloudy on the second accident.*

In order to use prior accidents to prove that Seaboard had notice of a dangerous or defective condition, plaintiffs must show that the prior accidents occurred under conditions substantially similar to those prevailing at the time of the subject occurrence. Moreover, other factors such as issue confusion and prejudice to the opposing party when weighed against the probative value of such evidence, are to be considered. As the Florida Supreme Court noted in *Perret v. Seaboard Coast Line Railroad Co.,* 299 So.2d 590, 592 (Fla.1974):

> Subject to the general requirement of *similarity of conditions, reasonable proximity of time, and avoidance of confusion of issues,* the courts have generally recognized that evidence of prior similar accidents at the same place as that of the accident in suit . . . is admissible for the purpose of showing the existence of dangerous or defective premises . . . . (Emphasis added.)

Careful review of the above answers to interrogatories convinces this Court that the factors claimed by plaintiffs to constitute a hazardous condition were not present in the prior mishaps. At least one of the prior accidents took place on a cloudy day thus negating any notion that the driver on that occasion, unlike Mrs. Roundtree, was partially blinded by the sun. And *both* prior accidents occurred around noon time which dispels any doubt about the sun's rays being a significant factor in the one prior accident that transpired on a clear day.

Plaintiffs did not even attempt to show in which direction the other motor vehicles and trains were traveling. Based on their theory of what constituted a hazardous condition—mainly the clump of trees north of highway 54 and the bright rays of a rising sun—it is only logical to conclude that the time of day, the kind of day, and the direction of the vehicles are factors absolutely necessary to meeting the burden of showing "substantial similarity" in circumstances.[1]

Moreover, assuming *arguendo* that Florida law controls evidentiary matters in a federal diversity case,[2] we believe *Perret* and *Friddle, supra,* give this Court the discretion to rule on whether such evidence should be admitted. Certainly we agree that it may be relevant, however, as noted earlier, the dichotomy of *probative* vis-a-vis *prejudicial* value of such evidence was carefully considered at the time of trial.

> Much care must be exercised in the application of this rule [to allow such evidence] inasmuch as the adoption of a rule of such broad admissibility would be tantamount to permitting the proof of negligence vel non by a showing of similar prior accidents. This could not be acceptable. Thus, safeguards must be maintained.

*Perret, supra,* at 592. Therefore we feel that, under the facts of this case, the evidence of prior accidents was properly excludable under Rule 403 of the Federal Rules of Evidence. *Cf. Jones & Laughlin Steel Corp. v. Matherne,* 348 F.2d 394, 400 (5 Cir. 1965). The motion will be denied.

---

1. While the Court is aware of a case that placed less significance on such factors as time of day and vehicle direction, *Seaboard Coast Line Railroad Co. v. Friddle,* 290 So.2d 85, 89 n. 2 (and accompanying text) (4th D.C.A.Fla. 1974) (Mager, J. dissenting), *quashed,* 306 So.2d 97 (Fla.1975), we nevertheless deem *Friddle* distinguishable and adhere to our ruling. Contrary to the facts *sub judice,* if, assuming the same hour of morning prevailed in either of the two prior accidents, the vehicle was traveling *west* and/or the train *north,* neither the sun nor the clump of trees north of the roadway could be causally related to the prior accident(s).

2. Neither party questioned the applicability of state law notwithstanding implementation of the Federal Rules of Evidence last year.