Patricia Ann Phelps BAILEY et al.,
Plaintiffs-Appellees,

v.

SOUTHERN PACIFIC TRANSPORTA-
TION COMPANY, Defendant-Appel-
lant.

No. 79–2637
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

March 21, 1980.

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

Robert Q. Keith, Beaumont, Tex., for defendant-appellant.

Strong, Pipkin, Nelson, Parker & Powers, Kenneth L. Parker, Beaumont, Tex., for Bailey, et al.

Michael L. Baker, Beaumont, Tex., for Alice Rowena Watson.

Before CHARLES CLARK, VANCE, and SAM D. JOHNSON, Circuit Judges.

PER CURIAM:

On November 30, 1976, R. E. Phelps, a 41 year old welder, left home for work at the American Petrofina plant in Groves, Texas. His daily route took him over a grade crossing in Orange County where State Highway 62 intersects the Southern Pacific's tracks. He had traveled this route for many years without incident. On this particular day, however, at approximately 7:00 a. m., a Southern Pacific locomotive sliced his car in two. This tragic accident took Phelps's life, and left behind a widow, five children, and a mother who was partially dependent upon her son for support.

A diversity suit was subsequently filed in the Eastern District of Texas, pursuant to the Texas Wrongful Death Act, Tex.Rev. Civ.Stat.Ann. art. 4671, *et seq.* (Vernon Supp.1980). The plaintiffs were the deceased's wife, children and mother. They alleged that the warning signal at the crossing failed to function on the morning of November 30th, and that Southern Pacific's negligence caused this failure. Plaintiffs also claimed that the crossing was extrahazardous and that the crew had operated the train at an excessive speed, without proper lookout, and without appropriate sound warnings during its approach.

The case was tried on May 1st and 2nd, 1979. Plaintiffs introduced evidence to substantiate their claim that the railroad was negligent. The defendant put an eyewitness and expert testimony that contradicted plaintiffs' evidence, and which tended to show that the deceased's contributory negligence (excessive speed and failure to keep a proper lookout) caused the accident. The jury retired with general interrogatories and on May 3rd returned with a verdict for the plaintiffs.

The jury verdict found defendant 95% negligent and the deceased 5% negligent. The panel then assessed damages at $300,000 for the wife, $92,000 for each of the five children, and $40,000 for the deceased's mother. The trial judge reduced the awards based upon the decedent's contributory negligence and entered final judgment in the aggregate sum of $760,000. The defendant filed a timely motion for new trial, and the district court promptly denied the motion. Defendant then instituted this appeal.

The defendant raises six points of error on appeal. The first is leveled at the district court's jury charge. The deceased's wife remarried prior to the trial of the lawsuit. While the trial judge allowed the remarriage to come into evidence, he instructed the jury that they were not to consider the remarriage in assessing damages. The defendant contends this instruction is contrary to Texas law.

The crux of defendant's position is that the Texas Legislature, when it enacted Article 4675a[1] (making evidence of remarriage admissible), intended to allow juries to consider the effect of remarriage on the surviving spouse's damages. To support this assertion defendant refers us to the testimony of State Senator Blanchard before the Texas Senate Jurisprudence Committee on March 27, 1973. During the course of his testimony concerning then proposed Article 4675a he said, "It just provides that if there is a ceremonial marriage you may present this in evidence in mitigation of damages, nothing more or nothing less." There is no other reference to this aspect of Article 4675a in the Senate hearings, the House hearings, or in the debates on the floor of the Legislature.

Plaintiffs argue that the district judge's instruction tracks Texas law. They rely on

two cases to buttress their position: *Richardson v. Holmes*, 525 S.W.2d 293 (Tex.Civ. App.—Beaumont 1975, writ ref'd n. r. e.) and *Conway v. Chemical Leaman Tank Lines, Inc.*, 525 F.2d 927, *on rehearing*, 540 F.2d 837 (5th Cir. 1976). In both cases the courts held that evidence of remarriage was not admissible for the purpose of mitigation of damages.

In diversity cases *Erie* teaches us that where state law has been announced by the state's highest court—it is to be followed. Intermediate state court decisions are also to be followed in the absence of a decision from the highest court, unless this Court is convinced that the highest court would decide otherwise. *Commissioner v. Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967). The scanty support that the defendant supplies for its contention that evidence of remarriage is admissible for the purpose of mitigation of damages is not the persuasive data that a federal court requires before it will depart from the law as set forth by an intermediate state court. We find no error in the trial court's jury charge.

Defendant's next three points of error focus on evidentiary rulings made by the district judge. Its first quarrel is with the rulings that allowed the plaintiffs to present testimony about other accidents and signal malfunctions at this particular crossing. The railroad contends that this evidence was irrelevant.

The plaintiffs introduced evidence of "other happenings" to establish that: (1) the crossing was extra-hazardous and (2) the railroad had notice that the warning signal had failed on other occasions. Given these two legal theories of liability, the testimony about other signal malfunctions was clearly relevant. Such evidence per-

---

1. Tex.Rev.Civ.Stats.Ann. art. 4675a (Vernon Supp.1980) provides:

 In an action under this title, evidence of the actual ceremonial remarriage of the surviving spouse is admissible, if such is true, but the defense is prohibited from directly or indirectly mentioning or alluding to any common-law marriage, extramarital relationship, or marital prospects of the surviving spouse.

mitted the jury to draw a reasonable inference that the crossing was dangerous and that the railroad had notice of mechanical difficulties with the signal. The fact that the malfunctions occurred at a different time of the day or that the witness to the light failures was traveling in a different direction goes strictly to the weight to be given the evidence. *Jones & Laughlin Steel Corp. v. Matherne*, 348 F.2d 394 (5th Cir. 1965).

■ The testimony about prior car-train collisions at the crossing was also relevant. Both witnesses who testified about prior accidents stated that the signal lights did not flash and the warning bells did not ring before their collision. That is exactly what plaintiffs allege happened on the day in question. Once again, such evidence permitted the jury to draw a reasonable inference that the crossing was extrahazardous and that the railroad had notice. The fact that the accidents occurred at different times in the day and involved cars traveling in the opposite direction goes to the weight to be given the evidence. *Id., Stoler v. Penn Central Transportation Co.*, 583 F.2d 896 (6th Cir. 1978)[2].

Defendant contends the trial judge erred when he admitted testimony about the deceased's character for care in driving a car. The railroad cites five instances in the trial when such testimony came into evidence. We find this point to be devoid of merit.

■ First, the railroad did not object on four of the five occasions when character testimony was raised by a witness. Federal Rule of Evidence 103(a)(1) bars the defendant from assigning error to the admission of character testimony in those instances. This failure to object relieves this Court from having to determine whether the trial court erred the one time character testimony was admitted over an objection. Even assuming the trial court erred in not sustaining defendant's objection, the doctrine of harmless error surely encompasses one statement during the course of a two day trial that the decedent was a careful driver. Fed.R.Civ.Proc. 61.

Defendant's final evidentiary contention is that the district judge erred when he allowed plaintiffs to read into evidence the testimony given at a previous trial by Mr. John Dixon. The previous trial involved a collision at this same crossing between a truck Dixon was driving and a Southern Pacific train. Dixon testified at the prior trial that no bells or flashing lights came on to warn of the train's approach. The railroad contends that this prior testimony was hearsay.

The trial judge correctly concluded that the testimony fell within the hearsay exception contained in Federal Rule of Evidence 804(b)(1)[3]. Rule 804(b)(1) requires first that the declarant be unavailable.

■ Rule 804(a)(5) defines unavailability as:

---

**2.** Appellant relies heavily on *Roundtree v. Seabound Coast Line R. R. Co.*, 418 F.Supp. 220 (M.D.Fla.1976). In *Roundtree* the trial court refused to allow plaintiff to read certain interrogatories into evidence. The interrogatories asked: (1) whether there had been other car-train collisions at the crossing (to which the railroad answered yes) and, if so, (2) the names and addresses of the drivers, along with the time and date of the accident, and the weather conditions.

*Roundtree* is distinguishable. Plaintiff's theory of liability in *Roundtree* was that a clump of trees and the bright rays of the rising sun made the crossing extra-hazardous. In order for the jury to be able to draw an inference from testimony about prior accidents that the crossing was extra-hazardous, the plaintiff had to establish a similarity between the prior accidents and his car-train collision. Given his legal theory of liability, that meant showing that the time of day, type of day and traveling direction of the vehicles were similar. Plaintiffs simply did not make such a showing. In our case, the plaintiffs did establish a substantial similarity between prior accidents and the accident that took R. E. Phelps's life.

**3.** Federal Rule of Evidence 804(b)(1) provides:
 **(b) Hearsay exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
 **(1) Former testimony.** Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now

**(a) Definition of unavailability.** "Unavailability as a witness" includes situations in which the declarant—

(5) is absent from the hearing and the proponent of his statement has been unable to procure his attendance (or in the case of a hearsay exception under subdivision (b)(2), (3), or (4), his attendance or testimony) by process or other reasonable means.

Plaintiff's counsel stated at trial that Dixon resided in Arizona, was beyond the court's process, and could not be brought to Beaumont to testify. "It was within the discretion of the trial court to accept or reject counsel's representations [about unavailability]." *Castilleja v. Southern Pacific Co.*, 445 F.2d 183, 186 (5th Cir. 1971). The defendant must demonstrate that the trial court erred in accepting plaintiffs' explanation. *Id.* The defendant has not met its burden, and no reason is made apparent to find that the trial court erred in holding Dixon to be unavailable.

 The other Rule 804(b)(1) requirement in dispute in the case at bar is the provision stating that the party against whom the testimony is being offered must have had a similar motive to examine the witness in the prior proceeding. Contrary to the defendant's assertion, its motive to examine in the prior case did not differ from that in the case at bar. Dixon testified at the previous hearing that the signal lights did not function properly and this failure caused the collision between his truck and the engine. Surely the railroad would have as one of its motives the desire to show that Dixon was mistaken in his observation. Since the factual dispute in this case is whether the signal lights worked properly, the defendant's motive to cross-examine would be virtually the same. Dixon's testimony fits neatly within the

offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

**4.** The railroad also argues that if Dixon's testimony was admissible, it should have been al-

requirements of Rule 804(b)(1). This Court must reject Southern Pacific's attempt to assign error to this evidentiary ruling[4].

Defendant's final two points challenge the jury's assessment of damages and division of negligence. We are not convinced by either of the defendant's arguments.

 The railroad argues that the amount awarded to each of the plaintiffs is excessive. However, it was the jury and the trial judge which had the opportunity to hear all the testimony and observe all the witnesses. Where the jury has returned an award and the trial judge has denied defendant's motion for a new trial, this Court is "exceedingly hesitant" to alter the verdict. *Bridges v. Groendyke Transport, Inc.*, 553 F.2d 877, 880 (5th Cir. 1977). Only where the verdict is "so gross . . . as to be contrary to right reason" or a "clear abuse of discretion with respect to assessment of damages" will this Court overturn a jury's decision that has been approved by the trial judge. *Id.* It cannot be asserted that the award is "contrary to right reason." The decedent was a 41 year old welder who, at the time of his death, was earning over $20,000 per year. The evidence showed he was terribly close to his family and continued to lend support (physical, financial and moral) to his mother. The jury award of $760,000 under the circumstances presented in this record can hardly be termed a clear abuse of discretion.

The defendant's final point is that the jury erred in finding the decedent to have been only 5% contributorily negligent. The railroad contends that, in light of this finding, the district court should have granted its motion for a new trial.

 A trial judge's denial of a motion for a new trial will be reversed only where it is shown that the court abused its

lowed to introduce into evidence the fact that the jury held Dixon to be 75% contributorily negligent. This point has no merit. The jury finding on contributory negligence is irrelevant to any issue in the case.

discretion. In order to establish an abuse of discretion the defendant must show an "absolute absence of evidence to support the jury's verdict." *Urti v. Transport Commercial Corporation*, 479 F.2d 766, 769 (5th Cir. 1973). The record clearly contains evidence to support the jury verdict. This point is overruled.

The judgment entered by the district court is

AFFIRMED.