IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————

NO. 93-7309

———————————

MAUREEN HILTGEN,
                Plaintiff - Appellee - Cross-Appellant,
versus

DOUGLAS LEON SUMRALL, ET AL.,
                Defendants - Appellants - Cross-Appellees.

---

Appeals from the United States District Court
for the Southern District of Mississippi

---

(Opinion October 27, 5th Cir., 1994, _____F.3d_____)

AS AMENDED ON DENIAL OF REHEARING
AND SUGGESTION FOR REHEARING EN BANC

(March 2, 1995)

Before REYNALDO G. GARZA, DeMOSS, and PARKER[*], Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

Maureen Hiltgen filed this diversity wrongful death action against Douglas Leon Sumrall ("Sumrall"), The Mason & Dixon Lines ("Mason"), and D. Larry Abston ("Abston"), asserting negligence and vicarious liability for an automobile accident that caused the death of her husband, Peter J. Hiltgen, on March 6, 1989. After a trial by jury, the district judge entered judgment on the verdict against all of the defendants, jointly and severally, in favor of the plaintiff on March 5, 1992.

---

[*]    Judge Parker participated by designation in the oral argument of this case as a United States District Judge for the Eastern District of Texas.  Since that time he has been appointed as a Fifth Circuit Judge.

The defendants' post-trial motions were ultimately denied, and this appeal followed. The plaintiff filed a cross-appeal as well, which was contingent only. Since we find no merit in the defendants' appeals, we do not address the points of error raised by the plaintiff.

FACTS

The accident from which this case arose occurred on March 6, 1989 at approximately 10:00 p.m. on Interstate 20 near Leeds, Alabama. Peter Hiltgen was killed instantly when his van slammed into the rear of a tractor-trailer rig driven by Sumrall. Sumrall is a Mississippi resident who was employed by Abston. Abston, also a Mississippi resident, owned the tractor-trailer, which had been leased to Mason for the purpose of carrying a load of plastic pipe from Quitman, Mississippi to Woodstock, Georgia. Mason is a Delaware Corporation with its principal place of business in Tennessee, and an agent in Meridian, Mississippi.

Prior to 10:00 p.m. on March 6, 1989, Sumrall pulled the tractor-trailer into the emergency lane or shoulder on the right-hand side of I-20 East, just outside Leeds, Alabama, near the 144 mile marker. Sumrall testified later that the purpose of this stop was to check his load and urinate. The evidence shows that when Sumrall was prepared to continue his haul to Woodstock, Georgia, he started to accelerate in the emergency lane and slowly brought the tractor-trailer back into the right-hand lane of traffic. The evidence also shows that the tractor-trailer was travelling approximately 20 - 30 miles per hour at the time of the collision.

2

Approximately seven miles west of the collision, Franklin Howard and Gordon Simpson, travelling in the same vehicle, had entered traffic on I-20 right behind the van driven by Peter Hiltgen. They testified that the van was not being driven in a reckless manner when they were in a position to observe it prior to the accident. Fifteen to twenty seconds before the collision, the Hiltgen van completed a safe pass of a vehicle driven by Britt Smith. Mr. Smith testified that the van was operating with only one headlight, but that it was being operated in a safe manner in all other respects. The evidence indicates that the Hiltgen van was travelling approximately 65 - 68 miles per hour immediately prior to the collision.

Shortly after the van passed Mr. Smith's vehicle, Smith, Howard, and Franklin saw the rear of the van suddenly jump in the air, and then saw the van veer off into the median. All three witnesses testified that at the time of the collision they could not tell what the van had run into. In addition, all three testified that they did not see the tractor-trailer rig or its lights prior to the accident even though, in their opinion, they were in a position to have seen the tractor-trailer if it had had its lights on. The evidence also shows that Hiltgen did not take any action to avoid the collision, indicating that he did not see the tractor-trailer in time to react.

Prior to trial, the district court ruled that Alabama law would be applied to the negligence claim against Defendant Sumrall. Thus, the defendants asserted the affirmative defense of

3

contributory negligence, which, if proven, provides a complete bar to the plaintiff's recovery under Alabama law.[1]  The district court also ruled that Mississippi law would apply to the vicarious liability claim against Defendant Abston because the employment relationship between Sumrall and Abston was entered into in the State of Mississippi.

Also prior to trial, Defendant Abston moved for summary judgment, arguing that he could not be held vicariously liable for Sumrall's actions because the trip-lease and Federal Motor Carrier Safety Regulation 49 C.F.R. § 1057.12 provided that during the term of the lease, Mason was deemed to have exclusive possession, control, and use of the equipment, and in addition that there was no evidence that Abston retained sufficient control over Sumrall to render Abston liable under the doctrine of respondeat superior. The district court denied Abston's motion, holding that a genuine issue of material fact existed with regard to Abston's control over Sumrall.

The parties presented physical evidence, lay testimony, and expert testimony.  At the close of all the evidence, the defendants moved for judgment as a matter of law under Rule 50(a) of the Federal Rules of Civil Procedure.  The district judge denied this motion and submitted the matter to the jury by use of a special verdict form.  The jury found that Sumrall had been negligent and that his negligence was a proximate cause of the collision.  The

---

[1]  *See, e.g., Alabama Power Co. v. Scholz*, 215 So.2d 447, 452 (Ala. 1968).

jury also found that Peter Hiltgen had been negligent, but found that Hiltgen's negligence was not a proximate cause of the collision. In addition, the jury found that Abston was liable for Sumrall's negligence.[2] Having found against all of the defendants, the jury then awarded the plaintiff $1,500,000.00.[3] The district court entered judgment on the jury verdict.

Following judgment, the defendants renewed their motions for judgment as a matter of law under Rule 50(b), and moved alternatively for a new trial under Rule 59 of the Federal Rules of Civil Procedure. Initially, the district court decided to grant the defendants' motion for a new trial on the grounds that the verdict was based in part on the incompetent testimony of plaintiff's expert witness. However, upon motion for reconsideration by the plaintiff, the court held that any error in admitting the testimony of the plaintiff's expert witness had been waived by the defendant's when they failed to raise a contemporaneous objection. Therefore, the court withdrew its order granting the defendants' motion for new trial. In addition, the district court was very clear that the defendants' renewed motions for judgment as a matter of law were denied.

---

[2] Defendant Mason conceded prior to trial that it was responsible, by operation of the trip lease and federal regulations, for Sumrall's actions. Therefore, there was no separate instruction or finding of the jury regarding Mason's liability.

[3] Under Alabama law, the plaintiff in a wrongful death action may only recover punitive damages. *See, e.g., Tatum v. Schering Corp.,* 523 So.2d 1042, 1052-57 (Ala. 1988). Having ruled that Alabama law applied, the district court appropriately instructed the jury on punitive damages.

After the court withdrew its order granting a new trial on the bases of erroneously admitted evidence, the court considered the defendants' motion for new trial based on the excessiveness of the jury's punitive damages award and request for remittitur. The court held a hearing to review the propriety of the award, as required by Alabama law,[4] and held that the amount awarded by the jury was not excessive.

On appeal, the defendants make the following arguments: 1) that the evidence is not legally sufficient to support the jury verdict and thus they are entitled to judgment as a matter of law; 2) that the jury's verdict is contrary to the great weight of the evidence and thus they are entitled to a new trial; 3) that improper jury instructions and reading of certain stipulations misled the jury and thus they are entitled to a new trial; and 4) that the jury's punitive damages award is excessive and thus they are entitled to a new trial on the damages issue or a remittitur of the jury's verdict. In addition, Defendant Abston argues that as a matter of law he is not vicariously liable for Sumrall's actions.

SUFFICIENCY OF THE EVIDENCE

A motion for judgment as a matter of law (previously, motion for directed verdict or J.N.O.V.) in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict. On review of the district court's denial of such a motion, the appellate court uses the same standard to review the

---

[4] *Industrial Chem. & Fiberglass Corp. v. Chandler*, 547 So.2d 812, 839 (Ala. 1988).

verdict that the district court used in first passing on the motion. *Bridges v. Groendyke Transp., Inc.*, 553 F.2d 877 (5th Cir. 1977). A jury verdict must be upheld unless "there is no legally sufficient evidentiary basis for a reasonable jury to find" as the jury did. Fed. R. Civ. P. 50 (a)(1).

This court has consistently applied this standard to show appropriate deference for the jury's determination.

> A jury may draw reasonable inferences from the evidence, and those inferences may constitute sufficient proof to support a verdict. On appeal we are bound to view the evidence and all reasonable inferences in the light most favorable to the jury's determination. Even though we might have reached a different conclusion if we had been the trier of fact, we are not free to reweigh the evidence or to re-evaluate credibility of witnesses. We must not substitute for the jury's reasonable factual inferences other inferences that we may regard as more reasonable.

*Rideau v. Parkem Indus. Services, Inc.*, 917 F.2d 892, 897 (5th Cir. 1990) (citations omitted).

The defendants address two distinct points, arguing that the evidence is insufficient to support the jury verdict. First, they contend that the evidence does not support the jury's conclusion that Sumrall was negligent. The district court specifically rejected this contention.[5] We agree with the district court's determination.

Specifically, the defendants argue that there was no evidence that the tractor-trailer's lights were off at the time of the collision. However, in our opinion, the testimony of Franklin Howard, Gordon Simpson, and Britt Smith provided ample evidence to

---

[5] Federal District Court Record at Vol. 12, p. 1531 n.3.

support a finding that the tractor-trailer's lights were off, and thus that Sumrall was negligent in his operation of the rig.  The defendants rely on Sumrall's testimony that he never turned the lights off.  However, the jury was free to consider Sumrall's interest in the outcome of the litigation and his credibility generally, and we will not replace the jury's evaluation of the weight or credibility of witness testimony with our own.[6]

Second, the defendants argue that the evidence does not support the jury's conclusion that Peter Hiltgen's negligence was not a proximate cause of the collision.  This issue was raised by the defendants' assertion of the defense of contributory negligence.  Contributory negligence, under Alabama law, is a defense that is a complete bar to the plaintiff's recovery if proven.  It is an affirmative defense on which the defendant bears the burden of proof.  *Robertson v. Travelers Inn*, 613 So.2d 376, 379 (Ala. 1993).  In addition to the burden of showing that the plaintiff failed to use due care for his own safety, the defendants bore the burden of proving that such failure was a proximate cause of the injury.  *American Furniture Galleries, Inc. v. McWane, Inc.*, 477 So.2d 369, 372 (Ala. 1985).

The element of causation may be broken down into two parts:

---

[6]  The defendants also contend that the "negative" testimony of the plaintiff's witnesses should not be allowed to outweigh Sumrall's "positive" testimony to the contrary.  Although the defendants have made a valiant effort to phrase this argument in the language of legal technicality, in essence it is no more than a request that we take the questions of weight and credibility away from the jury.  We must deny this request for the reasons given above.

factual or "but-for" causation and legal or proximate causation. *Hilliard v. City of Huntsville Elec. Util. Bd.*, 599 So.2d 1108, 1111 (Ala. 1992). Factual causation, or "but for" causation, asks whether the complained of injury or damage would have occurred but for the act or omission of the party in question. Proximate or legal causation asks whether the act or omission of that party is of such a nature that a court of law will recognize it as the legal cause of the injury.

There is no dispute that, as evidenced by his inaction prior to the collision, Hiltgen did not see the tractor-trailer in time to react to it. The central issue for the jury thus became "why?" The defendants contended that Hiltgen did not see the truck in time because of his contributory negligence. The plaintiff, on the other hand, contended that the decedent simply did not have time to react and that contributory negligence played no part in the accident. This presented a question of factual causation.

The defendants presented evidence on three different theories of contributory negligence: that Hiltgen was operating his vehicle with only one working headlight, that he was driving too fast under the circumstances, and that he was inattentive to the road ahead of him. The court instructed the jury that Hiltgen's operation of a vehicle at night with only one functioning headlight constituted negligence *per se* under Alabama law. The court also instructed the jury that it could find Hiltgen to have been negligent in operating his vehicle at a greater rate of speed than was reasonable under the circumstances and/or in failing to keep a reasonable and proper

9

lookout. By special verdict, the jury found that Hiltgen was acting negligently at the time of the accident, but that his negligence was not a proximate cause of the accident.

The uncontroverted evidence established that the Hiltgen van was operating with only one headlight functioning at the time of the accident, and the court appropriately instructed the jury that this defect constituted negligence *per se*. Therefore, the jury was obligated to find that Hiltgen was negligent in this respect, and this finding alone is sufficient to support the jury's finding on the first element of contributory negligence. This finding is also consistent with the jury's finding that Hiltgen's negligence was not a proximate cause of the accident because experts for the plaintiff and the defendants testified that Hiltgen would not have been able to see any farther ahead with two functioning headlights.

The defendants correctly assert that the evidence allowed the jury to find that Hiltgen was driving unreasonably fast under the circumstances and failed to keep a proper lookout. Indeed, if we were reviewing, in isolation, the special verdict finding that Peter Hiltgen was acting negligently, this court would not hesitate to assume that the jury made such findings and conclude that those findings were supported by substantial evidence. Such a conclusion would follow naturally from our duty to view the evidence and all reasonable inferences in favor of the jury's finding.

However, in the present case, we must also view the evidence and all reasonable inferences in favor of the special verdict finding that Hiltgen's negligence was not a proximate cause of the

accident. In fulfilling this obligation, we are constitutionally required under the Seventh Amendment to adopt a view of the case that makes the jury's answers consistent. *Gallick v. Baltimore & Ohio R.R. Co.*, 372 U.S. 108, 119 (1963); *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364 (1962); *Bourque v. Diamond M. Drilling Co.*, 623 F.2d 351, 353 (5th Cir. 1980); *Griffin v. Matherne*, 471 F.2d 911, 915 (5th Cir. 1973).[7]

Findings that Hiltgen was negligently driving an unreasonable speed or failing to keep a proper lookout would create a serious conflict with the jury's finding that Hiltgen's negligence was not a proximate cause of the accident. Therefore, we must view the evidence of Hiltgen's speed and attentiveness accordingly, i.e., in favor of the plaintiff.

Viewed in this light, the evidence allows a finding that Hiltgen was driving 65 m.p.h., the legal speed limit on I-20. The defendants contend that under the circumstances, including that the decedent was driving with only one functioning headlight, this was an unreasonable speed and should be deemed negligent. However, we cannot conclude that this conduct constituted negligence as a matter or law; nor can we assume that the jury found it to be

---

[7] The proper standard of review, as the dissent acknowledges, requires us to view the evidence in the light most favorable to the jury's verdict. This standard necessarily applies to the verdict as a whole. The dissent's approach would undermine the deferential standard for reviewing jury verdicts by allowing the appellate court to assume specific fact findings with regard to a particular special verdict even if those findings cause a direct conflict with another special verdict. Contrary to the dissent's allegation that we offer no precedent in support of our methodology, the cases cited above require the standard of review we apply.

negligent.

The defendants also contend that the evidence requires a finding that Hiltgen was negligently inattentive to the road ahead of him. We disagree. The parties presented evidence, including expert testimony, regarding the relative speeds of the two vehicles, the time Hiltgen had to react, and the time an average person would have needed to react and avoid the collision. The experts for both sides were cross-examined thoroughly. Both sides presented ample evidence on this issue to present a question for the jury.

The evidence shows, as discussed above, that the Hiltgen van was travelling 65 m.p.h. Based on the estimated stopping distance of the truck, the police report indicated that the truck could not have been going more than 31-32 m.p.h. at the time of the accident. Using this calculation, the plaintiff's expert witness, Thomas Langley, estimated that the truck was travelling at approximately 30 m.p.h. at the time of the accident. However, the plaintiff also presented the testimony of Howard Lucas who purchased the truck from Abston following the accident. Lucas testified that considering the gear Sumrall said he was in at the time of the accident, he could not have been driving more than 20-25 m.p.h.

Langley's testimony indicates that the reflection of the safety reflectors on the rear of the tractor-trailer would have first become visible when the Hiltgen van was 125 feet from it. However, Mr. Langley's testimony also indicates that this reflection would not necessarily produce a sufficient stimulus at

12

125 feet to induce an instant reaction in a fully attentive individual. In addition, he testified that the body of the truck would not have become visible until the van was 100 feet from it. There was also testimony that the average human reaction time is 1.5 seconds.

The defendants attempt to use mathematical calculations to show that they have established negligence and proximate cause conclusively. They argue that based on the estimates used by plaintiff's expert, the truck was moving 30 m.p.h. and Hiltgen should have seen a reflection 125 feet behind it. By the defendants' calculations, this indicates that the Hiltgen van was closing on the tractor-tailer at a speed of 35 m.p.h. and thus that Hiltgen had 2.44 seconds[8] to react and avoid the collision. They then point to Langley's testimony that Hiltgen would have needed 2.43 seconds to complete a critical swerve to miss the tractor-trailer.[9] Therefore, they conclude, Hiltgen had more than enough time to avoid the fatal crash had he been paying attention. Based on this difference of one one-hundredth of a second,[10] derived from an expert's estimates, the Defendants contend that they have conclusively shown negligent inattentiveness, by Hiltgen's failure

---

[8] 125 feet would be covered at a speed of 35 m.p.h. (51.33 feet per second) in 2.4352 seconds.

[9] Langley testified that a driver would need 232 feet at 65 m.p.h. (95.33 feet per second) to complete a critical swerve. When these figures are used to compute the time needed at a constant speed, the result is 2.4347 seconds.

[10] When the calculations are carried out two more decimal places, it can be seen that the slim reed on which the defendants rely is actually five ten-thousandths of a second.

13

to take any action, and proximate cause, by the fact that Hiltgen could have avoided the accident in the time he had to react.

The flaw in defendants' argument is that the jury was not required to rely on Mr. Langley's estimates. The testimony of Howard Lucas was sufficient to allow the jury to find that the Sumrall truck was moving as slow as 20 m.p.h. at the time of the accident. The jury also could have found that a reasonably prudent person might not have recognized the perilous situation until the truck itself was visible at 100 feet. Considering these facts, the jury could have concluded that Hiltgen had only 1.5 seconds[11] from the time he first saw the truck until he crashed into the rear of it. Since, according to the testimony, 1.5. seconds is the average human reaction time, the jury certainly could have concluded that Hiltgen was not negligently inattentive, and thus that inattentiveness was not a proximate cause of the accident.

In addition, the testimony of Franklin Howard, Gordon Simpson, and Britt Smith that Hiltgen was not driving recklessly and appeared to be in control of his van immediately prior to the accident supports the conclusion that Hiltgen was not negligently inattentive to the road ahead of him. Therefore, clearly the jury was not obligated to find that the decedent was negligent on this basis, and we cannot assume that it did so.

We must be especially careful when reviewing the sufficiency of the evidence where the party seeking relief, the defendants in

---

[11] If the truck were travelling 20 m.p.h., the closing speed of the van would have been 45 m.p.h. or 66 feet per second. 100 feet can be covered at 66 feet per second in 1.515 seconds.

14

this case, had the burden of proof on the issue in question.[12] We reiterate that defendants had the burden of establishing that Hiltgen's negligence was a proximate cause of the fatal accident. Although we must uphold the jury's finding that Hiltgen acted negligently, we cannot say that the defendants presented such proof that a reasonable jury could only conclude that Peter Hiltgen's negligence was a factual and legal cause of the accident. Therefore, we hold that the jury's findings regarding negligence and proximate causation are supported by legally sufficient evidence.

## MOTION FOR NEW TRIAL

Our review of the district court's denial of a motion for new trial is more deferential than our review of a denial of a motion for a judgment as a matter of law. "We will reverse the trial court's denial of a motion for new trial only when there is a clear showing of an abuse of discretion." *Dawsey v. Olin Corp.*, 782 F.2d 1254, 1261 (5th Cir. 1986).

1. WEIGHT OF THE EVIDENCE

Defendants argue that they are entitled to a new trial because the jury's verdict is contrary to the great weight of the evidence. To show an abuse of discretion, the defendants would have to be able to show "an absolute absence of evidence to support the jury's verdict." *Dawsey*, 782 F.2d at 1262 (quoting *Bailey v. Southern*

---

[12] *See Allen v. Seacoast Products, Inc.*, 623 F.2d 355, 360 n.9 (5th Cir. 1980); Steven A. Childress & Martha S. Davis, <u>Federal Standards of Review</u> § 3.06, at 3-65 (2d ed. 1992); 9 Charles A. Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 2535, at 592-93 (1971).

15

*Pacific Transp. Co.*, 613 F.2d 1385, 1391 (5th Cir.) (per curiam) (quoting *Urti v. Transport Commercial Corp.*, 479 F.2d 766, 769 (5th Cir. 1973)), *cert. den.*, 449 U.S. 836 (1980)).  Since we have already held that the jury's verdict was supported by the evidence, we do not find an abuse of discretion.

2.  ERROR OF THE TRIAL COURT

Defendants also argue that they are entitled to a new trial because certain instructions given to the jury and stipulated facts read to the jury may have led the jury to believe that it could find the Defendant Sumrall negligent on some unsupported general theory of negligence.  We have reviewed the district court's charge to the jury and conclude that it accurately reflects applicable law.  In addition, we do not believe that the order of the instructions created any risk of confusion.  "Trial courts are accorded great latitude in shaping instructions, and a verdict based judgment will be reversed because of an erroneous instruction only when the charge as a whole leaves us with substantial and ineradicable doubt whether the jury has been properly guided in its deliberations."  *Mayo v. Borden, Inc.*, 784 F.2d 671, 672 (5th Cir. 1986) (citations omitted).  We have no such doubt in this case.

The defendants also cite the fact that the district court read stipulated facts contained in the pre-trial order to the jury at the beginning of the trial.  To the extent that such stipulated facts were not relevant to the issues to be tried, their submission to the jury would seem to be contrary to Federal Rule of Evidence

16

402, which provides that "[e]vidence which is not relevant is not admissible." However, we do not believe that any of the stipulated facts created a substantial risk of confusion or prejudice. Therefore, we find that the district judge did not abuse his discretion in denying the defendants' motion for new trial on this basis.

3. EXCESSIVE DAMAGES/REMITTITUR

The defendants also contend that the jury's award of punitive damages is excessive and that they are entitled to a new trial on damages or a remittitur of the jury verdict. The district court properly instructed the jury on punitive damages, and the jury awarded the plaintiff $1,500,000.00. On defendants' motion for new trial or remittitur, the district court held a hearing to review the award for excessiveness and applied the factors provided by Alabama substantive law.[13] The district court fully considered the prescribed factors and held that the award was not excessive under Alabama law. The district court's decision in this regard is accorded considerable deference and should not be reversed absent an abuse of discretion. *Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 279-80, 109 S. Ct. 2909, 2922, 106 L.Ed.2d 219 (1989). Applying this standard of review, we find no error.

## ABSTON'S VICARIOUS LIABILITY

In addition to the arguments applicable to both defendants, Defendant Abston contends that he cannot be held liable for

_____

[13] *See Green Oil Co. v. Hornsby*, 539 So.2d 218 (Ala. 1989).

17

Defendant Sumrall's actions. This argument requires us to review both questions of law and findings of fact.

First, Abston argues that, as a matter of law, he cannot be held liable for Sumrall's actions under the doctrine of *respondeat superior* because federal regulations required Defendant Mason, as the lessee of the truck, to have "exclusive possession, control, and use" of the tractor-trailer provided by Abston.[14] Indeed, the lease, and the controlling federal regulations, provide the basis for Defendant Mason's liability in the present case. In *Simmons v. King*, this court recognized that the lessee's liability under such a lease[15] is not governed by the common law doctrine of *respondeat superior*. *Simmons*, 478 F.2d 857, 867 (5th Cir. 1973). Instead, the assumption of responsibility required by the federal

---

[14] The Federal Motor Carrier Leasing Regulations governed the lease entered into by Abston and Mason. Section 1057.12 of those regulations states, in relevant part:

> (c) Exclusive possession and responsibilities --
> (1) The lease shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease.

49 C.F.R. § 1057.12.

[15] In *Simmons*, as required by federal regulation, the lease provided

> It is understood that the leased equipment under this agreement is in the exclusive possession, control and use of the authorized carrier Lessee and that the Lessee assumes full responsibility in respect to the equipment it is operating, to the public, the shippers and the Interstate Commerce Commission.

*Simmons,* 478 F.2d at 862 n.13.

18

regulations made the loaded driver the statutory employee of the lessee, and rendered the lessee vicariously liable as a matter of law. *Id.*

We also held in *Simmons* that the legal responsibility of the lessee mandated by the federal regulations did not preclude the lessor's liability under common law standards of control. *Id.*

> This is not as incongruous as might be supposed. ICC can mandate a positive legal responsibility which we uphold in the only way it would be meaningful -- to give protection to the injured member of the public[.] At the same time [the lessor] has, or may have, a practical control over [the driver] of a kind which would allow it to obtain an automatic insulation from liability from the mere terms of a lease between two parties.

*Id.* Therefore, to determine whether Defendant Abston may be held vicariously liable under the circumstances presented, we must first look to the applicable state law.

The district court held that Mississippi law would be applied to the determination of this issue and this ruling has not been appealed. Although the Mississippi courts have used multi-factored tests to determine vicarious liability in different contexts, it also has held that the core issue is whether the employer had sufficient control that he ought to be held liable for the negligent acts of the "employee". *See Fruchter v. Lynch Oil Co.*, 522 So.2d 195, 198 (Miss. 1988).

The Mississippi courts have not addressed the application of the doctrine of *respondeat superior* to a situation like this one where a trip-lease purports to vest exclusive control over the equipment in a third-party lessee. However, we have no reason to conclude that the Mississippi court would allow an employer to

19

avoid vicarious liability by operation of such a contract while retaining *de facto* control of the employee. Therefore, we hold that under Mississippi law, an employer can be subject to vicarious liability based on a right or power to control an employee's actions despite the intervention of a written equipment lease that purports to vest exclusive control in a third-party lessee.

Since we find that the vicarious liability claim against Defendant Abston is not precluded by federal law or Mississippi state law, we must consider the relevant facts and review the district court's rulings on this issue. Abston testified that Sumrall was working for him and was loaned to Mason for the purpose of delivering specific cargo. Sumrall testified that he considered Abston his boss. After the accident, Sumrall telephoned Abston to report the accident and to obtain permission to complete the scheduled trip. In addition, it is clear that Sumrall's activity was in furtherance of Abston's business.

With these facts in mind, and in light of the law discussed above, we do not hesitate to affirm the district court's rulings. Clearly, these facts are sufficient to justify the district court's denial of Abston's motion for summary judgment. In other words, we agree that there existed a genuine issue of material fact with regard to Abston's control of Sumrall. Likewise, we affirm the district court's denial of Abston's motion for judgment as a matter of law because the jury's finding with regard to Abston's liability is more than sufficiently supported by the evidence.

CONCLUSION

After carefully reviewing the alleged errors raised by the defendants, we are of the opinion that all of them are without merit. Accordingly, the judgment of the district court is AFFIRMED.

**DeMOSS, Circuit Judge, dissenting:**

In response to special verdict questions, the jury answered that Sumrall (the driver of the 18-wheel tractor-trailer) was "negligent in connection with the occurrence of this accident" and that Hiltgen (the driver of the van) was "negligent in connection with the occurrence of this accident." In response to similar special verdict questions, the jury found that Sumrall's negligence <u>was</u> "a proximate contributing cause of the collision in question" but that Hiltgen's negligence <u>was</u> <u>not</u> "a proximate contributing cause of the collision in question." Therein lies the core controversy in this case, i.e., in a two-vehicle collision, where the jury has found both the drivers negligent "in connection with the occurrence of such collision," what evidence is required to form the basis of a "legally sufficient evidentiary basis for a reasonable jury" to find that one party's negligence **is a proximate cause** and the other party's negligence **is not a proximate cause** of such collision?

The answer to that question must start with the definition of what constitutes a "proximate cause" under the law of Alabama,

21

where this accident occurred.[16]   In the case of <u>General Motors</u>
<u>Corporation v. Edwards</u>, 482 So. 2d 1176 (Ala. 1985), the Supreme
Court of Alabama  discussed at length the elements of "proximate
cause" under Alabama law, and the following excerpts from that
discussion indicate the portions relevant to our present
controversy:

> In Alabama, as elsewhere, foreseeability
> is the cornerstone of proximate cause, <u>Alabama</u>
> <u>Paper Company v. Taylor</u>, 293 Ala. 484, 306 So.
> 2d 236 (1975).  As a result, one is held
> legally responsible for all consequences which
> a prudent and experienced person, fully
> acquainted with all the circumstances, at the
> time of his negligent act, would have thought
> reasonably possible to follow the act,
> <u>Prescott v. Martin</u>, 331 So. 2d 240 (Ala.
> 1976), including the negligence of others,
> <u>Williams v. Woodman</u>, 424 So. 2d 611 (Ala.
> 1982).  In short, as this court has frequently
> stated, and as the trial court in this case
> correctly instructed the jury, a particular
> cause is considered the proximate cause  of an
> injury if, in the natural and probable
> sequence of events, and without intervention
> of any new or independent cause, the injury
> flows from the act. . . .
>
> Loosely defined, an "intervening cause"
> is one which occurs after an act committed by
> a tortfeasor and which relieves him of his
> liability by breaking the chain of causation
> between his act and the resulting injury.
> <u>Vines v. Plantation Motor Lodge</u>, 336 So. 2d
> 1338 (Ala. 1976) . . . .
>
> An intervening cause may be an "act of
> God," such as an extraordinary event of
> nature, <u>Bradford v. Stanley</u>, 355 So. 2d 328
> (Ala. 1978), or the actions of another,
> usually, though not necessarily, another
> tortfeasor; however, a cause is not an
> intervening cause so as to relieve a
> tortfeasor of his liability, unless it comes

---

[16]I concur with the majority's decision -- under Mississippi choice-of-law principles -- to apply the substantive law of Alabama, the state where the accident and its legal consequences occurred.

into active operation <u>after</u> the tortfeasor has acted. . . .

Not every cause which comes into operation after a tortfeasor has acted will relieve him of liability for his wrongful act. More than the proper temporal relationship between the tortfeasor's act and the subsequent cause is required. In order to be an intervening cause, a subsequent cause must also have been unforeseeable and must have been sufficient in and of itself to have been the sole "cause in fact" of the injury. <u>Vines</u>, <u>supra</u> at 339. If an intervening cause could have reasonably been foreseen at the time the tortfeasor acted, it does not break the chain of causation between his act and the injury. <u>Vines</u>, <u>supra</u>; <u>Morgan</u>, <u>supra</u>; <u>Louisville and N.R. Co. v. Courson</u>, 234 Ala. 273, 174 So. 474 (1937). Conversely, if the intervening cause was unforeseeable, the causal chain is broken. <u>Vines</u>, <u>supra</u>. . . . .

Where two or more tortfeasors may be responsible for the same injury, the law of proximate cause is overlapped by the law of concurrent tortfeasor liability. The basic premise of concurrent tortfeasor law is that, as alluded to above, an injury may have several concurrent proximate causes, <u>Morgan Hill Paving Co. v. Fonville</u>, 218 Ala. 566, 119 So. 610 (1928), including the actions of two or more tortfeasors, neither of whose action was sufficient in and of itself to produce the injury, who act, either together or independently, to produce it. <u>Butler v. Olshan</u>, 280 Ala. 181, 191 So. 2d 7 (1966). Alabama law is clear that on such occasions, where the actions of two or more tortfeasors combine, concur or coalesce to produce an injury, each tortfeasor's act is considered to be the proximate cause of the injury, <u>Williams v. Woodman</u>, 424 So. 2d 611 (Ala. 1982). . . .

. . . .In other words, because the actions of each tortfeasor contributed, as a "cause of in fact," to produce the injury, no tortfeasor may assert that the actions of another tortfeasor, and not his own, caused the injury. The single exception to this rule is, as discussed above, where the unforeseen act

23

of another tortfeasor, which was sufficient in and of itself to produce the injury, intervened between the time the first tortfeasor acted and the injury. . . .

Edwards, 482 So. 2d at 1194-95.

Applying these precepts to this case leads to the following conclusions as a matter of law:

(1)  There is no evidence of any kind whatsoever in this case as to an "act of God" or "an extraordinary event of nature" which could have constituted an intervening cause.

(2)  There is no testimony of any kind whatsoever in this case regarding the actions of any third person or entity as having any connection with this collision, and we are left therefore with the conclusion that there are two, and only two, possible tortfeasors involved.

(3)  There is no evidence of any kind whatsoever in this case of any time or distance gap separating the negligence of Sumrall from the negligence of Hiltgen, and according to the uncontradicted evidence, the negligence of Sumrall and the negligence of Hiltgen were in fact occurring right up to the moment of impact.

(4)  Neither Sumrall nor Hiltgen can successfully contend that the negligence of the other was not foreseeable. The reason the law requires a commercial tractor-trailer to have operable taillights and not just reflectors on the rear of its vehicle is that the taillights increase the distance at which the trailer can be seen at night, so

24

that other drivers overtaking the trailer will be aware of its presence sooner than they would relying on their own headlights to activate the reflectors, particularly if such headlights are defective or on low beam. Conversely, the reason the law mandates that a vehicle have two operable headlights with the capacity to switch from low to high beam is to maximize the distance at which other traffic may be identified, even in the circumstance when other traffic may not be properly lighted. In either case, the circumstance of the occurrence of inoperable taillights or inoperable or defective headlights is a circumstance which is readily foreseeable. In a later case, the Supreme Court of Alabama, in discussing the "foreseeability" aspect of "proximate cause" stated: "Foreseeability does not require that the particular consequence should have been anticipated, but rather that some general harm or consequence could have been anticipated." Thetford v. City of Clanton, 605 So. 2d 835, at 840 (Ala. 1992).

(5) Consequently, there is no new or independent or intervening cause; the individual negligent actions of Sumrall and Hiltgen did "combine, concur or coalesce" to produce the injuries involved. Accordingly, each of those tortfeasor's acts "is considered to be the proximate cause of the injury." Therefore, the jury finding as to no proximate cause on the negligence of

25

Hiltgen is not supported by substantial evidence in the testimony and record and should have been disregarded when tested by the defendant's motion for judgment as a matter of law after the jury verdict.[17]

In the section of their opinion headed "Sufficiency of the Evidence," the majority undertakes an elaborate explanation to arrive at a conclusion to support the jury's finding of no proximate cause as to the negligence of Hiltgen. I cannot agree with either the methodology or the result of this analysis. Our task in reviewing the jury's verdict is of course complicated by the fact that the questions submitted to the jury on the special verdict as to negligence were generic rather than specific.[18] As the majority recognizes in its opinion, the defendants contended that Hiltgen was negligent in three respects: (1) operating his vehicle with only one working headlight at night; (2) driving too fast under the circumstances; and (3) being inattentive to the road ahead of him. The jury found that "Hiltgen was negligent in connection with the occurrence of this accident." This finding leaves us with the question of what, if anything can we deduce from

---

[17]Given that there was no testimony upon which either plaintiff or defendants could expect to support a jury verdict of no proximate cause as to their respective negligences, if any, the submission of the separate causation special issues served only to create the very possibility of confusion and conflict in the jury's answers which did in fact occur. Any negligence which the jury found on the part of either party would, as a matter of law, be a proximate cause of the resulting injuries.

[18]The text of the questions submitted to the jury was:
1.  Was Doug Sumrall negligent in connection with the occurrence of this accident?
2.  Was Peter Hiltgen negligent in connection with the occurrence of this accident?

26

a general finding of "negligence on the occurrence of this accident", as to what the jury determined as to any of the specific grounds of negligence asserted by the defendants against Hiltgen. As a matter of logic and legal requirements, it would seem to me that the test should be that the jury found negligence as to each of the grounds as to which the evidence would be sufficient to support the jury's finding if the jury had been asked specifically and separately as to each ground. Viewed from this perspective, there is no doubt that the evidence presented to the jury was sufficient to support a finding of negligence on the part of Hiltgen as to each of the three alleged grounds: (1) The issue of operating his vehicle with only one working headlight was stipulated by the parties, and the trial judge instructed the jury that such action constituted negligence per se under Alabama law; (2) As to the issue of driving too fast under the circumstances, there was clear evidence that shortly before the collision, Hiltgen passed another vehicle that was travelling at 65 mph, and that Hiltgen pulled away from this other vehicle 50 to 75 yards before the collision, and there was clear evidence that the one headlight working on Hiltgen's van was on the low beam setting; and (3) On the issue of failure to keep a proper lookout, there was clear and sufficient evidence that the brake lights on the Hiltgen van never came on, that the Hiltgen van made no skid marks, that the accelerator of the Hiltgen van was deformed by the impact of the collision indicating that Hiltgen's foot was resting on the accelerator at the moment of impact, and that the Hiltgen van never

27

swerved in either direction, but struck the rear end of the tractor-trailer head-on. The majority expressly recognizes the sufficiency of the evidence to support a jury finding on each of these grounds.

Logically, then, the next test is to determine the legal sufficiency of the jury's finding that none of the negligence of Hiltgen was "a proximate contributing cause of the collision in question." For the reasons described at the beginning of this dissent, I submit there is no evidence whatsoever upon which a jury could have relied to find either a time gap or a distance gap between the negligences of the two tortfeasors, which the jury had to have found to return a finding that Hiltgen's negligence was not a proximate cause of the accident. Furthermore, the injury resulting from this collision "flowed, in the natural and probable sequence of events, and without intervention of any new or independent cause," from the two acts of negligence which the jury found. Where, as the undisputed facts in this case demonstrate, the "actions of two or more tortfeasors combine, concur or coalesce to produce an injury, each tortfeasor's act is considered to be the proximate cause of the injury." Edwards, 482 So. 2d at 1195. Amazingly, the majority opinion does not contain even a simple definition of "proximate cause" under Alabama law, and there is no attempt on the part of the majority to assess the evidentiary factors that are clearly required in a determination of proximate cause. The majority expressly recognizes that there is a "serious conflict" between the jury's findings that Hiltgen was negligently

28

driving at an unreasonable speed or was failing to keep a proper lookout with the jury's findings that Hiltgen's negligence was not a proximate cause of the accident. Their solution to that conflict, however, is to reassess "the evidence of Hiltgen's speed and inattentiveness accordingly, i.e., <u>in favor of the plaintiff</u>" (emphasis added). No statutory provision or case precedent is cited by the majority to support their methodology of reassessing evidence "in favor of the plaintiff", and that strikes me as a new rule fraught with peril and full of potential abuse. We are bound to view the evidence in the light most favorable to the jury's verdict. The jury found against Hiltgen on the negligence issue. We should, therefore, view the evidence in a light most favorable to the negligence finding and <u>not</u> in a light most favorable to Hiltgen, as the majority suggests. The majority then proceeds to dispose of the unreasonable speed issue with the following statement: "We cannot conclude that this constituted negligence as a matter of law; nor can we assume that the jury found it to be negligent." I would not argue that the speed was unreasonable "as a matter of law," but I would strongly argue that the evidence on unreasonable speed was clearly sufficient to support a jury finding that it was unreasonable, and that when the jury finds that the driver was "negligent" and the evidence would support a finding of unreasonable speed, we should assume that the jury would have made that finding if they had been specifically asked. Similarly, as to the issue of "negligent inattentiveness," the majority goes through a similar re-weighing and re-assessment of the evidence in order

to produce a result most favorable to the plaintiff, and it concludes its analysis with the statement: "The jury certainly could have concluded that Hiltgen was not negligently inattentive, and thus that inattentiveness was not a proximate cause of the accident." Later on, the majority further states on this issue that: "Clearly the jury was not obligated to find that the decedent was negligent on this basis, and we cannot assume that it did so." As with the issue of unreasonable speed, however, when a jury finds generally that a driver is "negligent," we can logically, and should legally, assume that the jury would find that such negligence existed in any respect as to which the evidence is sufficient to support that aspect. On this inattentiveness issue, I would also point out that the majority attempts to kill two birds with one stone, i.e., not only could the jury conclude "that Hiltgen was not negligently inattentive" but also that the "inattentiveness," which was not negligent, was therefore "not a proximate cause of the accident." The logic of this determination escapes me.

In conclusion, there is nothing more "foreseeable" than the fact that if you drive with only one, low beam headlight at night (which is negligence per se under Alabama law), at an excessive speed, and you are inattentive to the road in front of you, you may run into the rear of a slower-moving vehicle whose taillights are not operating properly. Every safe driving course taught in every high school, and every defensive driving course given to adults, instructs over and over again that the greatest danger in driving

30

at night is "over-driving your lights," i.e., driving at a speed which prevents you from stopping or turning to avoid a hazard in the visible distance ahead.  Both of these curative actions are achievable if you have response time.  Response time is a function of speed and visibility,  visibility is a function of available light, and at night, hazards may not always have lights on them.  Furthermore, on a divided interstate freeway with two lanes for vehicles proceeding in the same direction, the ability to change lanes quickly is a safety factor which permits faster moving traffic to avoid and pass slower moving traffic.  Consequently, if one chooses to drive on our interstate freeways at or over the speed limit, the safer place to be is in the left-hand lane, because slower-moving, entering traffic must enter the right lane from the right, and departing traffic must slow down in the right lane to exit on the right.  Highway signs generally instruct slow-moving traffic to use the right lane.  The collision in this case occurred in the right-hand lane and at a point approaching a freeway exit.

The only evidence upon which the jury could have rationally based its decision that Hiltgen's contributory negligence was <u>not</u> a proximate cause of the accident was the testimony of plaintiff's expert "accident reconstructionist," Mr. Langley.  Mr. Langley's testimony did not address at all the factors required to determine "proximate cause" under <u>Edwards</u>, <u>supra</u>.  Furthermore, the trial judge correctly characterized Langley's testimony as "unsupported and incompetent" and sufficiently prejudicial to entitle defendants

to a new trial.  Regrettably, the trial judge backed down on his initial determination to grant a new trial;  therein, I think the trial judge erred.  But whether the trial judge erred in this regard is not the issue on appeal in this case.  The critical issue on appeal in this case is whether the jury's finding that Hiltgen's negligence was not a proximate cause of the collision in question was supported by legally sufficient evidence within the meaning of Rule 50(a) and (b).

For the reasons set forth herein, I would conclude that such finding is not supported by sufficient evidence and would **reverse and remand this case for new trial** as initially decided by the trial judge.